MARREE *v.* INGLE.

Opinion delivered March 2, 1901.

SURETY—DISCHARGE.—A surety upon a building contractor's bond is not discharged *in toto* by the fact that the obligee paid off the contractor one day earlier than was stipulated in the contract, but only to the extent that the surety was injured. Thus, where the obligee one day earlier than stipulated settled with the contractor and paid him $222.95, and subsequently was compelled to pay $449.75 to discharge a material man's lien on the building, for which the contractor was liable, he will be entitled to recover on the contractor's bond to the extent that the latter sum exceeds the former. (Page 128.)

Appeal from Sebastian Circuit Court.

STYLES T. ROWE, Judge.

STATEMENT BY THE COURT.

DeWitt Bros., contractors, entered into a contract with appellant by which they agreed to furnish all material, labor, etc., and build a cottage for appellant in Fort Smith, Ark., for the sum of $1,000, to be paid in five installments; the last payment of $333.34 to be paid when the building was completed, and after the expiration of ten days from such completion, and when the drawing and specifications had been returned to D. C. Wurtz, architect. The contract provided that the building was to be completed on or before June 30, 1898, under a penalty of $5 a day after that date until completed. Appellees executed their bond to appellant in the sum of $1,000, conditioned for the faithful performance of said contract by DeWitt Bros. DeWitt Bros. constructed the cottage, and were paid the contract price; the last payment being made on July 9, 1898. Sometime after the completion of the cottage, and after appellant had paid DeWitt Bros. the $1,000, the Van Buren Lumber Company filed a lien on the cottage for lumber and other material furnished

by said company to DeWitt Bros., and used by them in the con-
struction of said cottage, brought suit to foreclose the lien, obtained
a decree, and were proceeding to subject the cottage to the satis-
faction of the lien amounting with costs to $449.75, when appellant,
to save the cottage from sale, executed a stay bond, and suspended
the execution of the decree.  He thereupon brought this suit
against the appellees as sureties on said bond for said sum of
$449.47.

One of the defenses set up by appellees was that they were
discharged as sureties on said bond because appellant had deviated
from the contract in making the last payment to DeWitt Bros.
before it was due and payable by the terms of said contract, and that
appellees had been discharged by acts of appellant and the con-
tractor in derogation of contract.  Another defense set up by the
appellees was that appellant as owner of the cottage had paid over
money to the contractor before all laborers and mechanics employed
on same and all material furnishers had been paid for work done or
material furnished in building said cottage as required by section
18 of Mechanics' Lien Law, Acts of 1895, page 225.

Appellant was the only witness.  He testified that he made the
last payment on July 9, 1898, which was Saturday.  That prior
to that date he had advertised in the Fort Smith News-Record for
all persons who had bills for labor or material against the cottage
to present them to him by July 9, 1898.  That on Saturday, July
9, 1898, he and DeWitt Bros. had a settlement, and in this settle-
ment appellant assumed the payment of certain small bills that
had been presented to him in answer to his advertisement, amount-
ing to the sum of $140.45, and for the balance that they found
to be due DeWitt Bros. he gave his check in the sum of $222.95.
That at the time they were making this settlement DeWitt Bros.
told appellant that they owed the Van Buren Lumber Company for
material used in the cottage $90, and that when appellant paid them
they would go over and pay that bill.  That the said check for
$222.95 is dated July 9, 1898, and was given by appellant to De-
Witt Bros. on that date in payment of balance due them under the
contract.  The small bills, aggregating $140.45, that appellant had
assumed to pay were paid by him on July 13, 1898.  Appellant
testified that the cottage was completed on June 30 or July 1, 1898;
was not positive which of these days it was, but that it was one or
the other.  Possession was delivered to him on July 9, 1898.

·At the close of appellant's testimony, the court stated that, upon the evidence of plaintiff showing that he had, in less than ten days after the completion of the house, settled with DeWitt Bros, and paid them the full amount of balance due under the contract (less certain outstanding bills which he agreed to pay), defendants were discharged from liability, and gave a peremptory instruction to the jury to return the verdict for defendants.

*F. W. Jamison,* for appellant.

The making of the last payment before the time specified in the contract did not discharge the surety, the departure being immaterial. 77 N. W. 737; 64 U. S. 578; 65 Ark. 550; 52 Minn. 101; Brandt, Sur. & Guar. 345; 46 N. W. 1021; 36 Minn. 439; 49 Cal. 131. At most, the sureties would be released to only the extent of the premature payment. Brandt, Sur. & Guar. § 373; 12 So. 544; 23 N. E. 1095; 56 Pac. 641. The payment by appellant did not violate the act of April 20, 1895. *Cf.* 73 N. W. 524.

*Mechem & Bryant,* for appellees.

Settlement and payment of the balance due before the time permitted by the contract discharged the sureties wholly. *Cf.* 56 Pac. 41; 23 N. E. 1092; 77 N. W. 737. See 81 N. W. 882; 31 N. W. 861; 28 S. E. 147; 6 C. B. (N. S.), 550; 2 Keene, 638; 49 Cal. 131; 10 Mo. App. 595; 25 Fed. Cas. 671. *Cf.* also 14 Nev. W. 293; 11 S. W. 608; 65 Tex. 258. The sureties were discharged by appellant paying the creditors money when labor and material put into the house remained unpaid for. See "Mechanics' Lien Law," 1895, § 18; 1 Rob. 212.

HUGHES, J., (after stating the facts). It is settled in this court, as well as elsewhere, that a material or substantial change in a contract releases sureties in a bond given to secure the performance of the contract. *O'Neal* v. *Kelley,* 65 Ark. 550.

In *Benjamin* v. *Hilliard,* 23 How. 165, it is said, in reference to the release of sureties by alteration of a contract, that "there must be another contract substituted for the original contract, or some alteration in a point so material as in effect to make a new contract." Was there an alteration in the contract in the case at bar? The only deviation from it was that the proprietor paid the contractors one day before the last payment should have been made according to the contract. The building had been com-

pleted, and there were $333.34 due to be paid on the contract the day after it was paid to the contractors. Upon settlement the proprietor assumed several bills for materials that had not been paid, amounting 'to $140.45, thus leaving a balance due of $192.89, which was paid to the contractors while there was outstanding the unpaid bill of $445.75 for materials that had been furnished for the erection of the building for which the material man was entitled to have a lien declared upon the building. It follows therefore that the sureties were injured only to the extent that they were deprived by the premature payment of the $192.89 that should have been paid upon the lumber bill for $449.75. This amount the proprietor should have held as a security or protection *pro tanto* to them against liability upon their bond. The principle is that "when by the act of the creditor the surety has been deprived of the benefit of a fund for the payment of a debt, and the contract by which the surety is bound is not changed, he is only discharged to the extent that he is injured as in such case. It is the fact that he is injured that entitled him to a discharge." *Foster* v. *Gaston*, 23 N. E. 1095; *Cochran* v. *Baker*, 56 Pac. Rep. 641; *Pickard* v. *Shantz*, 12 So. Rep. 544. There was no alteration of the contract in this case. This construction is in accord with reason and justice, and is supported by the decisions.

We are of the opinion that it was optional with the proprietor to pay the contractor while there were claims for material and labor unpaid, and that this did not change the contract. "Nor were the sureties released by the fact that plaintiffs failed to retain money to pay liens' that might be filed, although authorized by the contract to do so. One of the purposes of the bond was to relieve plaintiff from looking after such claims."

The court erred in instructing the jury peremptorily to return a verdict for the defendants.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent herewith.