## FIDELITY & DEPOSIT COMPANY *v.* MERCHANTS & FARMERS BANK.

### Opinion delivered November 1, 1915.

BUILDING CONTRACTS—LIABILITY OF SURETY ON CONTRACTOR'S BOND—MIS-APPLICATION OF ARCHITECT'S ESTIMATE BY OWNER.—Appellant was surety on the bond of certain contractors who were to erect a building for appellee. During the construction of the building, the contractors borrowed a certain sum of money from appellee giving their note therefor. Before the completion of the building the contractors became involved and were obliged to abandon the work.

The architect thereupon issued an estimate of the amount due the contractors for work done up to that time, which appellee took and credited upon their loan to the contractors. In an action by the surety on the contractor's bond against the appellees, *held* that as against it, the appellee had no right to make said appropriation, and that the surety, who had completed the work under the contract, could recover the amount of the estimate, so appropriated, from the appellee.

Appeal from Desha Chancery Court; *Z. T. Wood,* Chancellor; reversed.

*Cockrill & Armistead,* for appellant.

1. Appellee bank is estopped from laying any claim to the $1,853 under the circumstances. Through its architect it represented at the time it called upon appellant that it would owe to the contractors upon the completion of the building under the contract, including that item, the sum of $4,155.50, and upon the faith of those representations appellant fulfilled the contract at an expense exceeding the total amount represented to be due.

2. The bond company became subrogated to the rights of the bank as owner to the fund retained by the latter and due to the contractor. 103 Ark. 473; 99 Ark. 618; Crawford's Dig., tit. "Subrogation;" 31 Ark. 411; 164 U. S. 227, 41 L. Ed. 412; 208 U. S. 404; 114 Fed. 529; 148 N. W. 55; 82 N. E. 688.

3. The application signed by the contractors provides that the bond company shall be subrogated as of the date of the application to all the rights of the contractors under the contract, etc. This assignment in the application took precedence over the assignment to the bank. 148 N. W. 55.

4. Even if the money loaned by the bank to the contractor went into the building, that fact did not give to the bank any lien or rights superior to the claim of the bond company. 10 Ark. 411; 47 Ark. 112; 56 Ark. 480; 99 Ark. 618, and other cases; *supra.*

*Jack Bernhardt* and *Sam Frauenthal,* for appellees.

1. The doctrine of estoppel does not apply in this case. That is a principle that is never applied where the

party asserting it had full knowledge of the facts before acting thereon.   2 Pomeroy, Eq. Jur. (3 ed.), § 805.

Appellant can not invoke the doctrine of estoppel for the further reason that it was not injured by any representation as to what had been paid or as to the amount that might be due the contractors.   It was appellant's duty to complete the building, no matter what was due the contractors.   It was bound under its contract to see to the completion of the building, or pay for it, and could not be affected in its action by what might be due the contractors.   The statement, therefore, was immaterial, and could not work an injury to appellant, even though it acted on it and thought there was a larger sum due the contractors than the facts justified.   2 Pomeroy, Eq. Jur. (3 ed.), § 812; 89 Ark. 349; 91 Ark. 141; 97 Ark. 43; 99 Ark. 260; 104 Ark. 538; 95 U. S. 326; 24 L. Ed. 387; 117 U. S. 96, 29 L. Ed. 811.

2.   This is not a case calling for the application of the doctrine of subrogation.   That doctrine applies only to substituting or placing the surety in the place of the creditor as against third persons.   In all the cases relied on by the appellant, the controversy was between the surety and some third person; but here the controversy is between the surety and the owner or creditor.

As to the item of $1,853, appellant is not entitled to claim it on the ground of subrogation in any event, for the reason that a surety can not be subrogated to the rights of the creditor until he has paid the entire debt due the creditor.   76 Ark. 245.   Not only so, but the surety can not be subrogated to the rights of the principal so as to have greater rights than the principal or be placed in a more favorable position than the principal as against the creditor.   103 Ark. 473; 37 Cyc. 479; 34 Ark. 113; 40 Ark. 132; 90 Ark. 86; 96 Ark. 594; 103 Ark. 473; 105 U. S. 423, 26 L. Ed. 1057; Sheldon on Subrogation, § 127; Brandt on Surety & Guardianship, § § 265, 266; 37 Cyc. 408.

3.   The contract provided that the payments should go to the laborers and materialmen first, and all moneys

paid by appellee did go to them. Appellee, as owner and creditor, under the terms of the contract itself, had the right to see that the payments it made should go to the laborers and materialmen, and if such payments did go to them, then it had superior rights over those of appellant for the money thus paid. The right obtained by virtue of such payments may not have been a lien upon the property or building, but it was an equitable assignment of the rights of action of the laborers and materialmen against the appellant. Act 446, Acts 1911; 84 Ark. 277.

Smith, J. The parties to this litigation prepared an agreement in the nature of an agreed statement of facts, it being in effect a statement of the respective contentions of the parties, and it was stipulated that this agreement might be read in evidence in lieu of depositions, but that either party might take proof to controvert the facts as there recited, but no such proof was taken. From this agreement we copy the following facts:

On July 31, 1913, R. J. McBride and J. M. McCammon, partners, under the firm name of McBride & McCammon, and the Merchants & Farmers Bank, of Dumas, the appellee herein, entered into a building contract, a copy of which was attached as an exhibit to the agreement between counsel. Pursuant to a stipulation of this building contract, the contractors made a written application to the appellant bonding company for a bond, which the bonding company thereafter executed. This bonding company made, executed and delivered a contractor's bond to the State of Arkansas for the use of the Merchants & Farmers Bank and all persons in whose favor liens might accrue in compliance with Act No. 446 of the Acts of the General Assembly of 1911 in the penal sum of $17,700, which bond was approved and filed as required by said act.

The building contract was an ordinary standard form building contract, by which the contractors agreed to construct a building for the bank for $8,500. Certifi-

cates of the architect were to be issued during the progress of the work, based on his estimate of the value of labor performed and materials incorporated in the building to the amount of 85 per cent, 15 per cent of the whole to be retained until final completion and acceptance of the work.

The contractors agreed to use all moneys paid them on the work and not to divert it to any other purpose until all labor and materials were paid for, and the contractors were given no right to demand any payment at all until they had shown, to the satisfaction of the architect and owner, that the preceding payment had been disbursed as theretofore provided. The owner or architect was given the right to demand statements and receipts showing payment for materials or labor and to withhold payments until such statements and receipts had been furnished. Upon the failure of the contractors to carry out their contract the owner, upon three days' notice, was authorized to take possession, carry out and complete the work and charge the expense thereof to the contractors, deducting the same from the contract price and to collect any loss from the contractors or bondsmen.

Charles L. Thompson was named as the architect, and was made superintendent for the owner with power to reject work, etc. The contractors agreed to complete the building on or before December 25, 1913. This contract was dated July 3, 1913.

The application to the bonding company for a bond was made on August 1, 1913, and the work on the building commenced soon thereafter. On March 14, 1914, the architect, wrote the agent of the bonding company that the contractors were in financial difficulties and were unable to complete their contract, and that claims amounting to about a thousand dollars had been filed against the building. On the 20th of March the bonding company, as surety, advised the architect that it would undertake the completion of the work and would protect the bank against all claims of labor men and materialmen and

would in other respects comply with and carry out the terms of said bond, and notified the architect, as the agent for the bank, to make no further payments, or give further certificates to said contractors. The architect was requested to furnish an estimate of the probable cost of completing the building in accordance with the contract, and in response to this letter the architect advised the appellant that the uncompleted work on the building was of the value of $600. After the agent of appellant had notified the architect to issue no more certificates in payment of the work done by the contractors, the bank, through its attorney, applied to and received from the architect a certificate showing a balance then due the contractors, less the retained percentage of $1,853. This certificate was dated the 23d of March, 1914, and was issued by the architect upon the assurance of the bank's attorney that the contractors had directed this to be done. Appellee took this architect's certificate and applied it to a note payable to its order, dated August 13, 1913, due and payable December 1, 1913, which had been executed in favor of the bank by said contractors.

The attorneys for the bank and the bonding company conducted a correspondence with the view of adjusting the liability of the surety company, and during the time this correspondence was being carried on appellant discovered that there were outstanding claims for material and labor aggregating about $3,500. The attorney for the bank agreed to accept the $600 offered by the bonding company, provided the bonding company would discharge all claims for liens against the building and would not seek to hold the bank liable for the $1,853 estimate given it by the architect. The bonding company declined to accede to this request, whereupon it notified the bank that, reserving all of its rights in the premises, it would complete the building and would attempt to recover from the bank the said sum of $1,853.

It was recited in the agreed statement of facts that R. J. McBride, of the firm of McBride & McCammon, alone represented his firm in the making and execution

of the contract with the bank, and personally attended to all details in providing finances and paying bills and labor. That all moneys received by him either from the loan from the bank or from estimates during the progress of the contract were paid to the account of said firm at the bank at Dumas and checked out of said bank by said McBride for the purpose of paying labor, supply bills, material and other expense growing out of the contract for said bank building, and that none of said funds was used or expended by him in any other contract that the firm was interested in at that time. That the note given by McBride & McCammon to the bank above referred to was secured by a writing from McBride & McCammon to said bank consisting of a letter signed by the contractors and directed to the architect to deliver to the bank any and all estimates that might become due to them on account of said contract as it progressed. That this letter was attached to the note as collateral, was of even date with the note, and held by the bank until it was finally paid by the application of said $1,853 as shown by said last estimate, at which time it was delivered to McBride & McCammon.

The controversy, therefore, is over the $1,853, which the bank insists it had the right to apply to the note of its contractors under the estimate made by the architect on March 23, 1914; while the appellant bonding company claims it as a fund due from the bank as owner under the contract on the contract price to which the bonding company became entitled upon taking over and completing the building contract. The bonding company claims to be entitled to that fund under the doctrine of equitable subrogation, as well as under the terms of its contract contained in the application.

The contractors abandoned the work about January 1, 1914, at which time there were unpaid bills of $3,567.57, which were later paid by the bonding company.

Appellee in its answer alleged that all sums advanced by it to the contractors "was legitimate in the conduct of its banking business" and it says the proof

shows that the sums so advanced by it were expended by the contractors in and about the erection of the building contracted for.

But appellant says that the $3,500 transaction between the bank and the contractors evidenced by the note of August 13, 1913, was either an ordinary bank loan or was an advance payment on the work to be thereafter done by the contractors, and that in either event the bank had no right to apply the amount of the architect's estimate of March 23, 1914, to the payment of that indebtedness. And we agree with appellant in its contention. This would certainly be the case if this were an ordinary loan; but the appellee says it should not be so regarded for the reason that this money was used in the discharge of demands for which the bonding company would have been liable if the demands had not been so paid. But the difficulty with that position is that, if the $3,500 loan be treated as an advance payment under the contract, then it was prematurely made and was excessive and violated the provision of the contract for the retention of the 15 per cent.

In the case of *Prairie State National Bank* v. *United States,* 164 U. S. 227, 41 L. Ed. 412, it was said: "That a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor of the performance of the work as for him for whom the work is to be performed; that it raises an equity in the surety in the fund to be created; and that a disregard of such stipulation by the voluntary act of the creditor operates to release the sureties, is amply sustained by authority." See also *Powell* v. *Fowler,* 85 Ark. 451; *Marree* v. *Ingle,* 69 Ark. 126; *Lawhon* v. *Toors,* 73 Ark. 473; *National Surety Co.* v. *Long,* 79 Ark. 523.

It was provided in the building contract that the contractors should have no right to demand any payment until they had shown, to the satisfaction of the architect and owner, that preceding payments had been disbursed as provided by the contract. Yet at the time this $1,853

was applied by the bank to the credit of the contractors' note there were unpaid bills amounting to $3,567.57, which the bonding company was required to, and did, pay. The bank was not required to pay any sum of money to free its property from the assertion of liens against it, as the statutory bond gave it exemption from that liability, and if the $3,500 loan be treated as an advance to be used in the construction of the building, and it be conceded that it was so used, the fact remains that the advance or payment was made in violation of the terms of the contract which fixed the liability of the bonding company as surety. But it is urged by appellee that the bonding company has waived any forfeiture of the bond by its action in completing the building after knowledge of the breach of the contract by the bank. But we think this is not true, for the reason that when the bonding company was unable to compromise its liability by the payment of a fixed sum of money it assumed the completion of the building upon the express condition that the right was reserved to hold the bank for the $1,853 alleged to have been wrongfully applied by the bank to the satisfaction of the contractors' note to its order.

The bank would have had the right to complete the building and charge the cost of the unfinished work to the bonding company, but it did not elect to do so, and had it done so, it would have then been confronted with the bonding company's claim for the misapplication of the architect's estimate. The bank knew when the bonding company entered upon the completion of the unfinished work that the bonding company was expressly reserving the right to litigate the appropriation made of the $1,-853, and under these circumstances we think it can not be said that appellant waived the breach of the bond and has estopped itself from asserting its claim to the $1,853.

The court below rendered judgment in favor of the bonding company for the sum of $2,302.50, which sum the bank had tendered into court at the time of filing its answer; but we think this amount should be increased by the allowance of the disputed item of $1,853, and the

judgment of the court below will, therefore, be reversed and judgment entered here for the appellant for the sum of $4,155.50.