MASSACHUSETTS BONDING & INSURANCE COMPANY, Respondent, v. RIPLEY COUNTY BANK, Appellant.

St. Louis Court of Appeals.    Opinion Filed December 14, 1921.

1. **SUBROGATION: Principal and Surety: Builders' Bonds: Surety on Contractor's Bond: Paying Claims: Entitled to Subrogation.** A surety on a building contractor's bond having paid the claims of materialmen under and in performance of its contract of suretyship, is entitled to be subrogated to the rights which the contractor would otherwise have had in and to the funds which by the contract were required to be reserved as security for the payment of the unpaid bills for material and labor, and such right of subrogation is superior to any right which the contractor had to make assignment of such funds or any portion thereof to a bank lending him money, even though used by him to pay for necessary labor and material in the construction of the building.

2. ———: ———: ———: **Release of Surety by School District: Rights of Materialmen and Labor not Affected.** The unauthorized and wrongful diversion of a reserve fund by a school district, even though operating to release the surety on the contractor's bond as far as the school district was concerned, did not and could not affect the right of materialmen and laborers, who were within the protection of the bond, to have recourse against the surety thereon, nor the surety's equitable right to look to such reserve fund to the extent that it might be compelled to pay unpaid bills for labor and material.

OCTOBER TERM, 1921. 561

Mass. Bond. & Ins. Co. v. Ripley Co. Bank.

3. **ELECTION OR REMEDIES:** Surety on Contractor's Bond: Suit Against School District: Following Diverted Funds: Consistent Remedies. Where a school district wrongfully diverted a reserve fund by paying it to a bank lending money to a contractor, the surety on the contractor's bond did not make irrevocable election, as between remedies available to it, by bringing action against the school district to recover the amount of the bills paid for material and labor, and it could, after obtaining judgment against the district, bring action against the bank, as there is no inconsistency in suing the district for misappropriating funds, that were in effect trust funds, by the wrongful payment thereof to another, and in pursuing such trust funds into the hands of the party receiving same, though but one satisfaction may be had. r

4. **SUBROGATION:** Surety on Contractor's Bond: Following Diverted Funds: Burden on Surety to Show It Paid Claims out of Its Own Funds. In an action by a surety on a building contractor's bond against a bank, seeking to follow funds which a school district had wrongfully diverted and paid the bank out of a reserve fund in its hands, in paying a loan which the bank had made to the contractor, and out of which fund the surety claimed the right to be repaid, the burden was upon the surety to show that it had paid out funds of its own, in the performance of its contract of suretyship, entitling it to follow the fund received by the bank from the school district that it may be reimbursed for such loss.

5. ———: ———: ———: Assignment of Fund by Contractor: Effect. The assignment by a building contractor of a certain part of a reserve fund held by a school district, and which the school district accepted and acted upon, operated in equity to transfer to the bank such right as the contractor had, or which he might ultimately have in and to such fund; the surety being entitled to look to the fund, provided to be retained by the district for reimbursement for any moneys which it might be required to pay out as surety, and to follow into the bank's hands the moneys paid to the latter by the district out of said fund to the extent that the surety may be said to have been damaged or prejudiced by such payment, but no more than this.

Appeal from the Cape Girardeau Court of Common Pleas.—*Hon. John A. Snider,* Judge.

REVERSED AND REMANDED (*with directions*).

*Borth & Ferguson* and *Abington & Phillips* for appellant.

*J. C. Sheppard* for respondent.

208 M. A.—36

ALLEN, P. J.—This is a suit in equity, instituted in the circuit court of Ripley county. On change of venue the cause went to the Cape Girardeau Court of Common Pleas where a trial, before the court sitting as a Chancellor, resulted in a decree in plaintiff's favor, from which the defendant prosecutes this appeal.

## THE PETITION.

The petition alleges that the School District of Doniphan, Missouri, on June 26, 1913, entered into a contract in writing with one W. J. McCully of the city of St. Louis, for the erection of. a high school building, to be built for said district in the town of Doniphan, which contract is set out in the petition, whereby the school district agreed to pay McCully, as the contract price for the erection of said building, the sum of $22,592, less $1500 for brick and lumber salvaged from an old school building; that by the terms of the contract pleaded the district agreed to pay to said contractor, on or before the 15th of each month, a sum equal to eighty per cent of the value of the work done and finished material built in place in the building during the preceding month, based upon estimates made by the architect; and that twenty per cent of the contract price should be reserved until the building was completed.

It is alleged that the contractor, as required by law, executed a bond, upon which this plaintiff, the Massachusetts Bonding & Insurance Company, became surety for the faithful performance on the part of said contractor of the covenants and agreements contained in the contract aforesaid, which bond is likewise set out in the petition; that the contractor fully completed all of the work to be done by him under the contract, and turned the building over to the district, which accepted the same, but that the contractor failed to pay all of the bills for labor and material furnished on said building; and that plaintiff, "as it was compelled to do by having signed said bond," paid all bills for material furnished

and labor performed on the building remaining due and unpaid, amounting in the aggregate to $4136.21. It is alleged that of said contract price, to-wit, $22,592, the school district paid to McCully, and to this plaintiff and upon its orders, the sum of $18,995.12, leaving a balance of $3596.88 remaining due and unpaid on said contract.

And it is alleged that by reason of the payment by plaintiff of the said bills for material and labor, plaintiff was "in equity subrogated to all the rights, equities, securities and monies which the materialmen, whose bills it had paid, had in and to all of the rights, equities, securities and monies which W. J. McCully had and all of the rights, equities, securities and monies which said Doniphan School District had, and which constituted a part of the twenty per cent so retained by it as aforesaid," by reason whereof plaintiff was entitled to have paid to it by the district, out of the money so retained by it, the sum of $3596.88.

The petition further alleges that on April 6, 1913, the Board of Education of said district, wrongfully, and without authority of law, and in disregard of the rights of plaintiff, and before the contractor had submitted receipts showing payment in full for all such material and labor or the certificate of the architect showing such payment, paid out of the said funds retained by it, as aforesaid, the sum of $2279.58 to the defendant bank, in payment of an individual debt of said contractor to defendant; and that defendant bank was neither a laborer on nor had it furnished any material to said building; that the defendant, at the time of the payment of said money to it, knew the purpose for which said fund was reserved by the school district, that the same was not subject to the payment of the individual debts of the contractor, knew of plaintiff's said right of subrogation and knew that the school district had no authority to pay defendant's claim out of said fund. And it is averred that the said payment to defendant was a wrongful and unlawful diversion of the funds so held by the school district, and a fraud upon the rights of plaintiff;

and that by reason thereof plaintiff has been damaged in the sum of $2279.58, and the defendant has become and is indebted to plaintiff in said sum, with interest from April 6, 1913. Judgment is prayed accordingly.

## THE ANSWER.

The answer, after admitting the averments of the petition as to the existence of the school district and the execution of the contract and bond pleaded in the petition, denies that plaintiff and McCully have paid all bills for material and labor used in and performed upon the building, and alleges that by the terms of said contract it became the duty of McCully and this plaintiff to pay for all material and labor necessary for the completion of said building in accordance with the contract; that in December, 1913, McCully became financially embarrassed and, in order to secure funds sufficient to pay for the labor and material necessary to be used in the erection of the building, borrowed from defendant $1000 for which he executed to defendant his note, and on Jan. 6, 1914, being still financially embarrassed and in need of money with which to pay for said material and labor, borrowed from defendant the further sum of $1500, for which he gave defendant his note; that to secure the payment of said notes, which were otherwise unsecured, McCully agreed with defendant that the same, with interest thereon, should be paid from the twenty per cent of the contract price of said building to be retained by the school district, as provided in the contract; and that McCully then and there assigned, transferred and set over to defendant, out of said fund, the sum of $2500, with eight per cent interest until paid; that the money so loaned to McCully by defendant was used by him to pay for necessary labor and material in the construction of said building, and was furnished to assist McCully and this plaintiff in carrying out the terms of said contract; and that it would now be inequitable and unjust to permit plaintiff to recover the same from defendant.

The answer then alleges that on April 1, 1914, the school district was made acquainted with said assignment by McCully to defendant, and on April 6, 1914, the district accepted the same and agreed to and did pay to defendant out of the fund above mentioned the sum of $2279.58, being the amount remaining in the hands of the School Board of said district due defendant by virtue of said assignment.

The answer further alleges that to secure this plaintiff against loss by reason of any of the facts pleaded in the petition, McCully has assigned and transferred to plaintiff securities and property of various kinds which in the aggregate "exceed in value any obligation or indebtedness that might arise and be owing from said McCully to this plaintiff growing out of any obligation that it might be compelled to pay by virtue of the bond set out herein;" and as a result thereof McCully has become insolvent, whereby defendant is deprived of any remedy at law or in equity as against him, whereas plaintiff is amply protected against any loss that it may sustain in the premises.

And the answer further alleges that on October 8, 1914, the plaintiff, with full knowledge of the facts pleaded in the petition and in the answer, brought a suit in the circuit court of Ripley county, Missouri, against said school district, for the sum of $3596.88, based upon the same facts upon which plaintiff now asks judgment against this defendant, which suit was prosecuted to a final judgment, which was affirmed on appeal; and that plaintiff thereby "elected to pursue the trustee of the trust alleged in plaintiff's petition, instead of pursuing the alleged trust fund therein mentioned;" and that such election precludes plaintiff from pursuing the alleged trust fund and operates as a bar to the prosecution of this suit.

Attached to the answer are exhibits consisting of the pleadings and the findings of fact and conclusions of law in the case of Massachusetts Bonding & Insurance Company v. The School District of Doniphan, referred to

in the answer, together with the judgment and mandate
of the Springfield Court of Appeals in that case.

## THE REPLY.

The reply admits that plaintiff filed a suit against
the school district for the sum of $3596.88, and recovered
a judgment against the district on April 24, 1917, in
the circuit court of Ripley county, which judgment was
affirmed by the Springfield Court of Appeals on appeal.
Plaintiff denies, however, that at the time said suit was
filed it had any knowledge that the moneys therein sued
for had at that time been paid over to defendant bank;
and denies generally the other allegations of the answer.

## THE FACTS.

By a stipulation of counsel filed, it was agreed
that the exhibits attached to defendant's answer, as
aforesaid, are true and correct copies of the records
and papers of which they purport to be copies, and ·
that in the trial of this cause such exhibits might be
introduced in evidence subject to plaintiff's objections
as to competency, relevancy and materiality.

To sustain the averments of the petition, not ad-
mitted by the answer, plaintiff read in evidence the
testimony of a number of witnesses as contained in the
bill of exceptions in said cause of Massachusetts Bond-
ing & Insurance Company v. The School District of the
City of Doniphan. This testimony, so far as it need
now be noticed, shows that under said contract of June
26, 1913, work was begun upon the building in July or
August of that year; that while the contractor com-
pleted the building, in January, 1914, he did not pay
all of the bills for material used therein; and that plain-
tiff paid bills for such material totalling, in face value,
$4136.43. However, it appears that plaintiff did not
pay all of these bills in full, but obtained certain de-
ductions from quite a number of them; the total thus
paid by plaintiff appearing to be approximately $3849.21,

this being the amount which, it appears, on the trial of the case of this plaintiff against the school district the court found to have been paid out by plaintiff on account of such bills.

In defense defendant likewise read in evidence the testimony of a number of witnesses contained in the bill of exceptions in said suit against the school district, and adduced other evidence as well. The testimony of the cashier of the defendant bank contained in said bill of exceptions was read in evidence and he was also called as a witness. From his testimony it appears that McCully first came to the bank about July 10, 1913, and stated that he had the contract for the erection of a new high school building, but did not have money to pay the bills that would arise in the course of the construction thereof, and wanted to arrange for a loan; that McCully stated that the only security he could offer was the contract which he had, under which the school board would retain twenty per cent of the contract price which would be "abundant margin" to protect the bank.

It appears that the first loan made to McCully was on the date last mentioned, and was for $300. According to the testimony for defendant other loans were made to him in August, September and October of that year; and on December 29, 1913, McCully executed a note to the bank for $1000, and a note on January 6, 1914, for $1500. He had an account at the bank, and, according to the testimony for defendant, all of his notes were paid by him, either by checks given by him against his account or by charging the notes to his account, except the amount due on the last two notes, and upon these was ultimately credited the balance in his account, leaving due thereon $2279.58. The evidence is that the bank notified the school board that it looked to the Board for the payment of its claim against McCully from the twenty per cent of the said contract price retained by the school district. The cashier admitted that no written assignment was made by Mc-

Culley to the bank of any interest claimed by him in the fund so retained by the district.

The testimony of members of the school board, and records of that body introduced in evidence by defend-- ant, show that on April 3, 1914, at a meeting of the school board, a representative of this plaintiff, one Schermerhorn, presented a written assignment, of date April 2, 1914, executed by McCully purporting to assign the rights of the latter in his said contract to this plaintiff, and insisted that the school board pay plaintiff the balance of the contract price remaining in its hands, but that the board refused to do so "because said contractor had failed to produce receipted bills showing payment of all sums for work and labor done and material furnished in the erection of said high school building." And the record of this meeting recites that "the Board insisted said company (plaintiff) should pay the indebtedness due the Ripley County Bank, being two notes aggregating $2500, as well as all other bills that had not been paid." And on April 6, 1914, the school board ordered that from the funds remaining in its hands as aforesaid, defendant bank be paid said sum of $2279.58, by warrant drawn by the clerk, upon the assignment and surrender to the board of said notes and the giving of a bond by the bank, in the sum of $5000, to protect the district against liability by reason of such payment; all of which things were done.

It appears that prior to making this payment, the school board had on hand a balance remaining out of the said contract price of $3596.88, as alleged in the petition herein, not taking into account, however, $320 which the board claimed it was entitled to deduct for delay in the completion of the building, at the rate of $10 per day, as provided in the contract. The testimony of McCully was that certain "extra work" had been done by him, and that it was agreed that "the extra work and the penalty (for delay) would offset each other." This testimony, however, was disputed, and the records of the meetings of the Board, introduced in evidence, though showing

that this matter was discussed, show no action taken thereon. In the suit of this plaintiff against the school district, the court, in its findings of fact, found that there was no agreement "by which the penalty of $320 was released," and consequently rendered judgment against the district for $3276.88, instead of $3596.88. In the instant case the court made no finding on the facts, but simply rendered a judgment for plaintiff against the bank in the said sum of $2279.58.

Such further reference to the evidence as may appear necessary will be made in the course of the opinion.

## I.

There can be no doubt that to the extent that plaintiff, as surety on the contractor's bond, has paid the claims of materialmen, under and in preformance of its contract of suretyship, plaintiff is entitled to be subrogated to the rights which the contractor would otherwise have had in and to the funds which by the contract were required to be reserved as security for the payment of unpaid bills for material and labor; and that plaintiff's said right of subrogation is superior to any right which the contractor had to make assignment of such funds or any portion thereof to the defendant bank. [See: Prairie State Bank v. United States, 164 U. S. 227; Henningsen v. United States Fidelity & Guarantee Co., 208 U. S. 404; Hardaway v. National Security Co., 211 U. S. 552; 25 R. C. L., p. 1383, sec. 65.]

The argument advanced by defendant, appellant here, that the facts in evidence show an equitable assignment by McCully to the bank of a portion of the fund reserved by the district, sufficient to secure the payment of McCully's notes to the bank, might be well enough, indeed, if the matter were one between the immediate parties, not affecting the rights of anyone having a superior claim, in law or equity, against such fund. But while McCully might have made a valid assignment of his contingent interest in or right to such fund—an interest or right contingent upon the satisfaction by him of the

rightful claims of all persons for whose protection the fund was so reserved—he had no power to make any assignment of such fund, or any part thereof, however formally executed, which would have any validity as against either the right of the school district to look to such fund, if need be, for its protection, or plaintiff's right to look thereto, if need be, for reimbursement for any sums that it might be compelled to pay for labor or material furnished to the building, in the performance of its contract of suretyship. The contractor could not transfer to the bank any greater right in or to the fund than he himself possessed; and his right in respect thereto was subordinate to the equity which arose in favor of plaintiff by virtue of, and at the time of the latter's execution of the contract of suretyship. [See: Prairie State Bank v. United States, 164 U. S. 227.]

## II.

The point is made that if the said payment to defendant by the school district was unauthorized and wrongful, then the diverting of this fund by the district to the payment of an unauthorized debt would operate to release the surety on the contractor's bond. But it is quite clear that if the school district deprived itself of the right to sue upon the bond—which is not here involved—this could not in any way affect plaintiff's aforesaid equitable right. If it be conceded, *arguendo*, that the school district had thereby released the surety on said bond, so far as it was concerned, this did not and could not affect the right of materialmen and laborers, who were within the protection of the bond, to have recourse against plaintiff, as surety thereon, or plaintiff's said equitable right to look to such reserved fund to the extent that it might be compelled to pay unpaid bills for labor and material.

## III.

It is strongly urged by appellant that since it appears that the money borrowed by McCully from the

bank was used by him in paying bills incurred in connection with the construction of the building, it would be inequitable and unjust to now require the bank to refund the money received by it from the school district. But this argument, we think, is unsound. The very object to be accomplished by this stipulation in the contract was to prevent the payment to the contractor of this twenty per cent of the contract price, and to have this reserved for the protection of those entitled to look thereto, including this plaintiff. And if the same could at any time be lawfully paid out to any one to whom the contractor might make an assignment thereof, then such provision in the contract was futile. Under the circumstances, a payment to the bank out of this fund, to pay a debt of the contractor, was nothing more than an indirect payment thereof to the contractor.

## IV.

It is argued at great length in the brief of learned counsel for appellant that by electing to sue the Doniphan School District, and pressing that suit to final judgment, this plaintiff made an irrevocable election as between remedies available to it, and is thereby precluded from pursuing the defendant in this action. This argument proceeds upon the theory that with respect to this fund the school district stood in the position of a trustee; that when the trustee paid out the fund in question to the defendant bank, plaintiff had one of two remedies, either to proceed against the trustee or to follow the trust fund, but that it cannot pursue both. In this connection a number of authorities are cited and discussed, but we do not regard them as here in point. In order that the action against the school district may be held to be a bar to the prosecution of the present suit, it must appear that the remedies are inconsistent. We think that there is no inconsistency in suing the district for misappropriating funds, that were in effect trust funds, by the wrongful payment thereof to another, and in pursuing such trust funds into the hands of the party receiving the same; though but one

satisfaction may be had. And it affirmatively appears that no part of the judgment against the school district has been paid. The opinion of this court by Judge Becker in Reynolds v. Union Station Bank, 198 Mo. App. 323, 200 S. W. 711, thoroughly disposes of a like contention made in that case. [See, also, Steinbach v. Murphy, 143 Mo. App. 537, 128 S. W. 207; Milwaukee Nat'l. Bank v. State Bank, 103 U. S. 668; 20 Corpus Juris, 9, 10.]

## V.

At the trial McCully, the contractor, was called as a witness for defendant. He testified, among other things, in regard to a transaction between him and plaintiff's representative, Schermerhorn, in St. Louis, subsequent to the completion of the building, and when plaintiff had learned that material bills remained unpaid. McCully testified that at that time he "had some money on deposit up in St. Louis" which was taken over by plaintiff; that this money, together with $150 which he then paid to plaintiff, amounted to about $1300, which sum was received by plaintiff and used largely in paying bills due in St. Louis—"local bills that were due on the Doniphan High School." When asked if he knew what bills were thus paid, he said: "No; I can't recall that; it is three years ago." And in this connection we may state that the record shows that of the material bills paid by plaintiff a number thereof—amounting to more than $1300—were bills due in St. Louis.

Plaintiff adduced no testimony touching this matter, and this testimony of McCully stands uncontradicted in the record. And it is argued for defendant that the amount actually paid by plaintiff, out of its own funds, in settlement of material bills, was not $3849.21, the amount paid out by it, but $2549.21. In response to this plaintiff's learned counsel says that there is no presumption that the bills involved in this suit were the same as those paid by plaintiff out of McCully's money, but that, on the contrary, the presumpton prevails that all men are honest. This, we think, does not reach the

point. Plaintiff is not entitled to reimbursement for sums expended by it in the payment of material bills out of funds supplied by McCully, or for which it has been reimbursed by McCully. And the burden was upon plaintiff to show that it had paid out funds of its own, in the performance of its contract of suretyship, entitling it to follow the fund received by defendant from the school district, that it may be reimbursed for such loss. It may be noted that this record discloses no testimony whatsoever, in behalf of plaintiff, that the material bills shown to have been paid by it were paid with its own funds. No representative of plaintiff testified in the case. Plaintiff merely adduced the testimony of persons who had furnished material to the building, or who were representatives of corporations or firms who had done so, whereby it was shown that payment or settlement of the material bills due such persons, firms or corporations, was made by plaintiff. There is no suggestion in the record that plaintiff paid any bills for material or labor other than the bills above mentioned, which were the same bills shown to have been paid by plaintiff in its suit against the school district. And, as said, there is uncontradicted testimony for defendant that plaintiff obtained from McCully $1300 which it used, for the most part, in paying bills of this character in the City of St. Louis, retaining the remainder thereof.

Under these circumstances, we think that plaintiff's total claim to be here reckoned with, as for monies paid by it in settlement of the contractor's bills for material, must be reduced by the amount of $1300, i. e. reduced from $3849.21 to $2549.21.

The record of the suit of this plaintiff against the school district in evidence in this case, shows that in said former suit the district admitted that of the original contract price the sum of $997.30 remained in its hands, and offered to let judgment go against it for that amount. In arriving at this sum, the district took credit for said sum of $320 which it claimed was due it for delay in the completion of the building; and we cannot say that it was not entitled to make such deduction. And it may be in-

ferred that the district still has said sum of $997.30, remaining out of the contract price, which has always been available in satisfaction, pro tanto, of plaintiff's claim. Under the circumstances, we are of the opinion that plaintiff is not entitled to a recovery against this defendant in excess of the difference between $2549.21 and $997.-30, or $1551.91. The assignment which McCully undertook to make to the bank for its protection, and which the school district has accepted and acted upon, operated, in equity, we think, to transfer to the bank such right as the contractor had, or which he might ultimately have in and to said fund. It is true that plaintiff was entitled to look to the fund, provided to be retained by the district, for reimbursement for any monies which it might be required to pay out as surety, as aforesaid, and to follow into defendant's hands the monies paid to the latter by the district out of said fund to the extent that plaintiff may be said to have been damaged or prejudiced by such payment. But we think that plaintiff was not entitled to more than this. Plaintiff alleges that it has been damaged, by said payment to defendant, in the sum of $2279.58; but, with plaintiff's claim reduced to $2459.21, the facts do not sustain such averment, since the original fund in the hands of the school district exceeded the amount of plaintiff's said claim, by $727.67. The contractor was entitled to any surplus in the original fund over and above plaintiff's total claim of $2549.21; and we think that the contractor's right thereto has, in equity, passed to the defendant bank. And in this view defendant should be allowed to retain such surplus, amounting to $727.67, if plaintiff, in seeking equity, is to be required to do equity; and plaintiff's recovery against defendant should be accordingly limited to the sum of $1551.91.

Other questions raised are not of controlling importance, and need not be discussed. The judgment below is accordingly reversed and the cause remanded, with directions to the trial court to enter judgment for plaintiff in the said sum of $1551.91, with interest from the institution of this suit. *Becker* and *Daues, JJ.;* concur.