AMERICAN BANK & TRUST COMPANY *v.* LANGSTON.

Opinion delivered December 16, 1929.

644

646

648

*W. B. Rhyne, James B. McDonough* and *Anthony Hall,* for appellant.

*Wm. M. Hall, Hill, Fitzhugh & Brizzolara* and *George A. Hall,* for appellee.

HART, C. J., (after stating the facts). The principal question raised by the appeal is the right of priority to the retained percentage fund as between the bank and the surety company, which may be settled as a question of law under the practically undisputed facts. The percentage reserved in the contract by the sewer district out of each monthly estimate served to secure it against any loss it might sustain on account of the nonperformance of the contract, and also served to secure any others who had any rights under the contract. The right of the parties to retain a specified percentage dates from the time the contract was entered into. The right of the bank under its assignment also dates from the execution thereof. The bank, by the assignment to it by Langston of all his rights under the contract with the sewer dis-

trict, acquired only such rights as Langston had, and by its equitable garnishment could only impound in its favor such part of the retained percentage fund as the sewer district has, unaffected by prior liens or equities of other parties. The sewer district made no contract with the bank to pay it any amount it might pay out to Langston to aid him in performing his contract for the construction of the sewers. The bank was a mere volunteer. It loaned Langston a certain amount of money, and it did not acquire any liens of any kind by loaning money to Langston to be used in the construction of the sewers. On the other hand, the surety company bound itself by the execution of the bond to pay all bills for material and labor used in the work. It was obligated to do this, and took an assignment of all the claims for labor and material used in the work when it paid the same. Thus it will be seen that the retained percentage in the contract was not only for the benefit of the sewer district and operated as an equitable assignment of the fund to it for any loss or damage suffered by it in the nonperformance of the contract by Langston, but was for the benefit of any one else who had acquired rights and incurred obligations under said contract and bond executed for its faithful performance. The bank knew that Langston had executed a contract with the sewer district for the construction of the sewer, and it will be deemed to have knowledge of the terms of said contract and the obligation of the surety under the bond, which was required by statute. The rights of these parties had become vested before Langston made any contract with the bank, and could not be divested by any subsequent assignment made by Langston to the bank of his rights under the contract.

The bank knew, when it took the assignment from Langston, that its value depended upon whether or not the contract with the sewer district could be executed by Langston at a profit. The contract of the sewer district with Langston provided for a stipulated percentage to be retained until the completion of the contract. This was

not only to protect the district against any claims against the contractor, but also served to protect the surety company and laborers and materialmen. This is so because the contract expressly provides that Langston is to discharge and pay such claimants, and shall give a surety bond in double the amount of the cost of construction for the faithful performance of his contract. The bond is conditioned that the principal shall pay all bills for material and labor used in the work. Under the terms of the contract and bond, the district had a right to recover from Langston any amounts it might pay to discharge any legal liability against Langston for the faithful performance of his contract. The surety company was not a volunteer in the premises. Under its bond it became obligated to pay all bills for material and labor used in the work. Having done so, it became subrogated to the rights of the sewer district. The surety company, by the terms of the bond and contract, became obligated to pay the laborers and materialmen, and thus release the contractor from his obligation to them, and to the same extent released the sewer district from all obligations to see that the laborers and materialmen were paid. Having done this, not as a volunteer, but by reason of contract obligations with the sewer district, entered into before the commencement of the work, it was entitled in equity to subrogation to any right of the sewer district arising through the contract by it with Langston for the construction of the sewer, and the bank's claim, by reason of the assignment, is subordinate to the claim of the surety company. *Prairie State Bank* v. *United States,* 164 U. S. 227, 17 S. Ct. 142; *Henniggsen* v. *United States Fidelity & Guaranty Co.,* 208 U. S. 404, 28 S. Ct. 389; *Hardaway* v. *National Surety Co.,* 211 U. S. 552, 29 S. Ct. 202; *Waco County* v. *New England Equitable Insurance Co.,* 88 Ore. 465, 172 Pac. 126; *Canton Exchange Bank* v. *Yazoo County,* 144 Miss. 579, 109 So. 1; *Lewis* v. *United States Fidelity & Guaranty Co.,* 144 Kentucky 425, 138 S. W. 305; *National Surety Co.* v. *Berggren,* 126 Minn.

128, 148 N. W. 55; *Massachusetts Bonding Co.* v. *Ripley County Bank,* 208 Mo. App. 560, 237 S. W. 182; and *Maryland Casualty Co.* v. *Washington National Bank,* 92 Wash. 500, 159 Pac. 689.

That the equity of a surety on a bond given by the contractor, who, by reason of the contractor's default, has been obliged to pay materialmen and laborers, is superior to that of a bank loaning money to the contractor, secured by the assignments of amounts to become due, has been recognized by this court in *Fidelity & Deposit Co.* v. *Merchants' & Farmers' Bank,* 120 Ark. 519, 179 S. W. 1019. In that case the court quoted with approval from the case of *Prairie State National Bank* v. *United States,* 164 U. S. 227, 17 S. Ct. 142, the following:

"That a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor for the performance of the work as for him for whom the work is to be performed; that it raises an equity in the surety in the fund to be created; and that a disregard of such stipulation by the voluntary act of the creditor operates to release the sureties, is amply sustained by authority."

These authorities also hold that the surety cannot be denied the right to subrogation in cases like this because it is a paid surety. Subrogation is allowed because the surety has paid the debt of his principal under his obligation to do so. The question as to what induced the surety to assume the obligation cannot be considered in determining his rights. If he has been compelled under the bond or contract to pay the debt of his principal, he is entitled to be subrogated to the rights of the creditor.

It is next insisted that the decree should be reversed because the engineers were not allowed to recover the sum they paid for an assistant engineer during the period of delay in the completion of the contract. The engineers claimed this right under § 30 of the contract. This section provides for an additional compensa-

tion to the engineers during the period of time of the delay in the completion of the work at the rate of ''$350 per month or fraction thereof, and all expenses incident to the work.'' The engineers were paid at the rate of $350 per month for the period of time in which the completion of the work was delayed after the date stipulated in the contract for the completion of it. They were also paid the stipulated percentage for the work that was done by them under the contract up to the date specified for its completion. Their claim, however, is that the decree should be reversed because under the clause, ''and all expenses incident to the work,'' they were entitled to compensation which they paid to an assistant at the rate of $275 per month. We do not agree with them in their construction of the contract. We think that the clause in question means the personal expenses of the engineer in the work. It did not mean that they might employ other engineers to do the work for them, and call this expense incident to the work. They have not shown that they were out any personal expenses incident to the work between the date the sewer system was required to be completed under the contract and the date it was completed. Hence the chancellor properly disallowed their claim for additional compensation.

The court was also justified in its finding that the sewer district was entitled to recover liquidated damages in the sum of $2,595, and that, on this account, the sewer district only had in its hands, as retained percentage under the contract, the sum of $8,044.64. Section 29 of the contract provides that the time of completion is the essence of the contract, and that the board will deduct from the estimate, as liquidated damages only, an amount equal to $15 per day for each day's delay in completion over the specified time of completion. This was done. The contract price was $66,849.60. The contract gave ample time for the construction of the work, and it is clearly ascertainable that the parties intended the sum stipulated to be the measure of damages for breach of the contract by the contractor. The damages were uncer-

tain, and the amount stipulated was not unreasonable. The importance of completing the sewer within the time limit was evident, and the parties had a right, under the circumstances, to agree that $15 per day should be the measure of damages for the delay by the contractor in the performance of the contract. *Robins* v. *Plant,* 174 Ark. 639, 297 S. W. 1027, 59 A. L. R. 1128.

It does not make any difference that the bond was not filed as required by statute. Its provisions were as broad as the statute, and expressly provided that the surety shall pay all bills for material and labor used in the construction of the system of sewers; and the proof shows that the amounts paid by the surety company were for amounts for material and labor in the construction work, and in each instance the claimant obtained judgment on an express finding that the claim was for labor performed or material used in the construction of the sewer, and the claim was duly transferred to the surety company before it was paid. This was sufficient. *Leslie Lumber & Supply Co.* v. *Lawrence,* 178 Ark. 573, 11 S. W. (2d) 458; *Ætna Casualty & Surety Co.* v. *Big Rock Stone & Material Co., ante* p. 1, 20 S. W. (2d) 180.

On the cross-appeal but little need be said. The attorney or agent for the surety company who had charge of settling the claims of materialmen and laborers practically admitted that the claims disallowed by the court were not such claims as were required to be paid by the surety company under its bond and contract with the district. Hence the court properly disallowed them.

The result of our views is that the decree of the chancery court will be affirmed, both on the appeal and the cross-appeal.