## J. CALVIN CARNEY ET AL., RECEIVERS, *v.* UNITED STATES GUARANTEE COMPANY
[No. 85, October Term, 1934.]

*Decided January 16th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, and SLOAN, JJ.

*R. Contee Rose* and *J. Calvin Carney,* with whom was *Albert A. Sapero* on the brief, for the appellants.

*W. Randall Compton,* with whom were *Semmes, Bowen & Semmes* on the brief, for Concrete Steel Corporation and others, appellees.

URNER, J., delivered the opinion of the Court.

In a bill of interpleader the State Roads Commission alleged that it had a total of $8,231.96 as retained percentages payable under two completed contracts of Henry L. Maas & Sons, Inc., for the construction of highway

bridges over relocated tracks of the Pennsylvania Railroad at Elkton, Maryland; that before those balances became due, on final estimates, the affairs of the contracting company were placed in the hands of receivers, who claimed the funds accruing under the contracts, and that a claim to the funds has also been preferred by the United States Guarantee Company, as surety on the contractor's bonds, because of its liability thereon, to an amount in excess of the retained balances, for unpaid labor and material costs incurred in the constructions to which the contracts and bonds referred. Pursuant to a decree of interpleader, the State Roads Commission paid into court the sum of money involved in the conflicting claims of the receivers and the surety, and they were directed to litigate, in that proceeding, the question as to the proper disposition of the funds. Subsequently the labor and material creditors were made parties to the suit and filed answers asserting an equitable right to have their claims paid out of the fund in litigation. The final decree provided for the distribution of the funds among the labor and material claimants. From that decree the receivers of the contractor have appealed.

Included in the condition expressed in the bond, given in connection with each of the contracts, was the requirement that the contractor should "well and truly pay all and every person furnishing material or performing labor in and about the construction of said bridge, all and every sum or sums of money due him, them or any of them for such labor and materials for which the contractor is liable."

The bonds were given in compliance with the following provisions of section 6 of article 89B of the Code (as enacted by chapter 539 of the Acts of 1931), relating to bonds under contracts with the State Roads Commission, and of section 14 of article 90 of the Code, relating generally to bonds for public works:

"In no case shall any such bond be approved or accepted unless the obligators bind themselves therein to the payment of all just debts for labor and materials incurred by

the bidder in the construction and improvement of the road contracted for." Code, art. 89B, sec 6.

"In all cases where any bond or undertaking, conditioned for the faithful performance of any contract for construction, installation or repair work, is given to the State of Maryland, or any of its agencies, such bond or undertaking shall not be approved or accepted unless the obligors bind themselves therein to the payment of all just debts for labor and materials incurred, through subcontract or in any other manner, by or in behalf of the person, firm or corporation to whom such contract has been given, and who is named as principal in such recognizance, stipulation, bond or undertaking. Provided, that in the event that there is a liability to the State, or any agency thereof, under any such bond or undertaking, and also a liability thereunder for labor and materials, then the liability of the State shall be preferred, and shall be paid and discharged in full before any payment is made for or on account of the liability for labor or materials; and provided, further, that any suit or proceedings to enforce the liability under any such bond or undertaking for the payment of debts for labor or materials shall be brought in the name of the obligee named in such bond or undertaking, for the use and benefit *pro rata* of all creditors for labor or materials who may be entitled to claim thereunder, and shall be instituted not later than one year from the completion of the whole work covered by the contract and the acceptance thereof by the State, or its agency as aforesaid." Code, art. 90, sec. 14.

The question for decision is whether, in view of the statutory provisions just quoted, and of the obligations thereby exacted, the unpaid balances of the contract cost of the work, to which the labor and material creditors contributed, should be appropriated to their claims in preference to those of the contractor's general creditors represented by the receivers.

There have been numerous cases in the federal and state courts in which questions analogous to the one now

under consideration have been determined. In the great majority of such cases the conclusions support in principle the decree under review on this appeal. Relevant decisions under provisions substantially similar to the Maryland statutes are summarized in 76 *A. L. R.* 917, and in 40-42 *U. S. Code Ann.* pp. 111, 112, and include *Henningsen v. U. S. Fidelity & Guaranty Co.*, 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547; *Hardaway v. National Surety Co.*, 211 U. S. 552, 29 S. Ct. 202, 53 L. Ed. 321; *Alfred Richards Brick Co. v. Rothwell*, 18 App. D. C. 516; *In re P. McGarry & Son* (C. C. A.) 240 Fed. 400; *Massachusetts Bonding & Ins. Co. v. Chouteau Trust Co.* (C. C. A.) 264 Fed. 793; *Belknap Hardware & Mfg. Co. v. Ohio River Contract Co.* (C. C. A.) 271 Fed. 144; *Central State Bank v. U. S. Fidelity & Guaranty Co.* (C. C. A.) 9 Fed. (2nd) 326; *Maryland Casualty Co. v. Dulaney Lumber Co.* (C. C. A.) 23 Fed. (2nd) 378; *Riverview State Bank v. Wentz* (C. C. A.) 34 Fed. (2nd) 419; *American Bank & T. Co. v. Langston*, 180 Ark. 643, 22 S.W. (2nd) 381; *Southern Surety Co. v. Merchants' & Farmers' Bank*, 203 Ind. 173, 176 N. E. 846, 179 N. E. 327; *Canton Exch. Bank v. Yazoo County*, 144 Miss. 579, 109 So. 1; *Massachusetts Bonding & Ins. Co. v. Ripley County Bank*, 208 Mo. App. 560, 237 S. W. 182; *First Nat. Bank v. Pesha*, 99 Neb. 785, 157 N. W. 924; *Wasco County v. New England Equitable Ins. Co.*, 88 Or. 465, 172 P. 126; *Haverstick v. Paul H. Sheirich, Inc.*, 304 Pa. 437, 155 A. 859; *Maryland Casualty Co. v. Washington Nat. Bank*, 92 Wash. 497, 159 P. 689; *Barrett Bros. Co. v. St. Louis County*, 165 Minn. 158, 206 N. W. 49.

Under the federal statute, commonly known as the Heard Act (U. S. Code, tit. 40, sec. 270, 40 U. S. Code Ann. sec. 270), which closely resembles the second of the Maryland statutory provisions above quoted, it was held, in the leading case of *Henningsen v. U. S. Fidelity & Guaranty Co., supra*, that the surety on the contractor's bond, upon paying labor and material claims, as to which the contractor had defaulted, was entitled, by way of subrogation, and as against an assignee of the contractor,

to the unpaid balance due under the contract, so far as needed for the surety's reimbursement. It was decided by the Court of Appeals of the District of Columbia in *Alfred Richards Brick Co. v. Rothwell, supra,* that sureties have the right, under the federal statute, to interpose in equity to prevent the diversion of the contract price and require it to be paid to materialmen and laborers primarily. In the case of *In re P. McGarry & Son, supra,* it was held that where the proceeds of a government contract came into the possession of the contractor's trustee in bankruptcy, the laborers and materialmen, who had not been paid, and the surety on the contractor's bond who had paid some claims for labor and materials, are entitled to the fund in preference to the contractor's assignee and general creditors.

Most of the cases cited above were concerned with questions of priority between an assignee of the contractor and the surety on his bond who had paid labor and material claims for which the contractor was liable. The surety was uniformly preferred to the assignee in the distribution of the reserved fund, when the assignment did not appear to have been made in consideration of money advanced for the completion of the work contracted for, but where that fact was proved, the decisions are in conflict upon the question of preference as between the surety and the assignee. No such question arises in this case, because there has been no assignment of the fund and no payment has been made by the surety to the labor and material claimants. The simple inquiry here is whether those claimants have such an interest in the reserved fund, earned under the contracts, as to entitle them to have it applied to their claims in preference to those of general creditors of the contractor.

The recognition of such a right, in those who contributed by their labor and materials to the completion of the public work on account of which the distributable fund accrued, has been based upon the implications of the considered statutory provisions manifesting a governmental concern for their protection. In the Maryland statutes

which we have quoted there is a clear indication of such a protective purpose and solicitude. As stated in the opinion in *American Fidelity Co. v. Short & Walls Lumber Co.*, 128 Md. 50, 97 A. 12, 14, "the manifest object of the act [Code, art. 90, sec. 14], in addition to assuring the State that the road would be built according to the plans and specifications, was to protect all those who furnished labor and materials in the construction of the road." In requiring from the contractor and his surety an express agreement to pay all just debts for labor and materials incurred on account of the public work undertaken by the State or any of its agencies, the Legislature definitely indicated its interest in having that class of debts properly secured. It would not be consistent with the policy thus demonstrated to deny to such claims the right of priority here asserted. Unless such a right is recognized, it is possible that in many cases the insolvency of both the contractor and his surety might render valueless, to the labor and material claimants, the State's assumed obligation to protect their interests. In view of the evident purpose of the State to afford such protection, the State Roads Commission, in disposing of the retained balance due under the contracts in this case, could not have ignored the fact that there are bills for labor and materials which have not been satisfied. Until the contracting company had paid those debts, it could not claim that its agreement with the commission was fully performed, and until the complete performance of the contract there would be no right in the company's receivers to have the commission deliver the fund into their custody. That fund is the only one available for the full payment of the labor and material claims, so far as any resources of the contractor are concerned. His surety is answerable only in the event of his default as principal with respect to the obligation to make such payments. Since the contractor covenanted with the State to pay the labor and material creditors, and since its governmental agency, functioning under the contract to which their claims are attributable, has a fund available for their payment, ex-

isting in consequence of the work and supplies they provided, the conditions are appropriate for the recognition of their superior right to the fund in order to give practical effect to the State's concern for their protection as revealed by its quoted statutes. Upon the law and facts there is just ground for regarding the fund as impressed with a trust for the primary benefit of those for whom that legislative concern was expressed.

The priority accorded the labor and material claimants in the distribution of the balance accrued under the construction contracts does not imply that a general liability for the payment of such creditors may be imputed to the public agency by which the fund is to be applied. It is only with respect to the disposition of money due by such an agency, and awaiting payment to those entitled, under a fulfilled contract for public work, that the claims of the laborers and materialmen are here considered and sustained.

In *Lombard Governor Co. v. Baltimore,* 121 Md. 303, 88 A. 140, it was decided that a building contract with the City of Baltimore, providing, as directed by ordinance, that money due the contractor on the completion of the work could be retained by the city to the amount of the unpaid bills for labor and materials, until they were paid by the contractor, did not give materialmen a lien on a fund so reserved, nor entitle them to have it impounded for their benefit by suing the city in equity for that purpose. The nature of that case, the contractual and other circumstances by which it was affected, and the principle applied in its decision, differentiate it from the case presented in this interpleader proceeding for the determination of an asserted statutory right to a fund paid into court.

There is testimony in the record to the effect that the highway bridge work, from which was derived the fund now in dispute, was partly financed by the contractor with money collected under certain contracts for public structures in Baltimore City after subcontractors on those projects had receipted, without payment, for the amounts

to which they were entitled. It is argued that the sub-contractors on the city work who thus made possible the use, under the bridge contracts, of funds which would otherwise have been available for the satisfaction of their claims, have an equitable right to share in the fund awaiting distribution which the bridge work produced. But since there is no suggestion of any actual or attempted assignment, to the subcontractors for the city buildings, of any interest in the proceeds of the bridge contracts, and since they are consequently limited to the rights of general creditors of the contractor in regard to the question before us, it is sufficient simply to state our conclusion that their rights, as such creditors, are subordinate to those of claimants who supplied labor and materials for the construction of the bridges, with respect to the fund derived from that source.

*Decree affirmed, with costs.*