NORTON *v.* MARYLAND CASUALTY COMPANY.

Opinion delivered November 3, 1930.

*R. W. Wilson,* for appellant.
*Ashley Cockrill,* for appellee.

MEHAFFY, J. This is an appeal from a decree of the Desha Chancery Court in favor of the appellee. In August, 1926, J. T. Carr entered into a contract with the State Highway Commission to construct a road in Desha County 21.18 miles in length. The contractor executed a bond with the Maryland Casualty Company as surety for the faithful performance of the contract and the payment of all bills for labor and material entering into the construction of said road or used in the course of the per-

formance of the work. The contractor did not get estimates as he claimed he should have gotten, and he was unable to pay bills for labor and material. He requested appellant to assist him, and on March 1, 1927, appellant let the contractor have $1,000 to meet his payroll on the road that he was building. On June 11, 1927, appellant indorsed note of Frank Carr, son of the contractor, for $500, which he afterwards had to pay. This money was also borrowed to meet payrolls. On July 14, 1927, appellant let contractor have $3,000 to meet payrolls. On the same day, July 14, Carr gave appellant a note for $4,000 for the $1,000 advanced on March 1, and the $3,000 which appellant had let him have on July 14, but did not include the $500 above mentioned. There was written in the corner of the note: "This note is given as advanced money for road work." Carr told them to pay it out for actual labor and material, and appellant testified that he was to take the place of the laborer on the payroll when they got the estimate. Carr was unable to complete the job, and on December 12, 1927, he made an assignment to the Maryland Casualty Company. The following is the assignment:

"ASSIGNMENT

"I, J. T. Carr, hereby assign to Charles F. Guild, representing the Maryland Casualty Company, all estimates, funds and moneys now due or hereafter becoming due under contract for the construction of a gravel road from McGehee to Watson in Desha County, Arkansas, known as 'Federal Aid Project No. 189-A,' and authorize the State Highway Commission of the State of Arkansas to make out and deliver all future estimates and to pay all such sums due thereon under said contract to said Charles F. Guild. Dated this 12th day of December, 1927."

This assignment was signed by J. T. Carr and witnessed by J. T. Harris. After this assignment the Maryland Casualty Company took over the contract and work and completed the construction of the road. Some time

in the latter part of 1927, after consulting his attorney, appellant went to McGehee and had a conversation with J. T. Carr and Charles F. Guild, the representative of the Maryland Casualty Company. Appellant went to McGehee to institute suit for his money if he could not get some kind of promise. He was, according to his testimony, assured by Carr and Guild that the job was in good shape, and they would pay all the indebtedness due the different ones. Carr is indebted to appellant in the sum of $4,400. The court entered judgment against J. T. Carr but held that the Maryland Casualty Company was not liable, and dismissed the complaint against it.

It is first contended by appellant that the surety company is liable under the assignment from Carr. We find nothing in the assignment to justify this claim, and appellant has called our attention to nothing upon which to base this claim.

Appellant next urges that the Maryland Casualty Company is liable under express agreement to pay appellant's claim. The evidence on this question is in conflict, but, if appellant's evidence was not contradicted, it is not sufficient to sustain his contention. There is no evidence that appellant promised appellee that he would not bring suit if appellee would promise to pay. The evidence of appellant only tends to show that the job was in good shape and that he would get his money. Doubtless both Carr and Guild thought that was true at that time. Nothing was done to induce appellant to postpone bringing suit. If appellee was liable, a promise would add nothing to the obligation or liability. If it was not liable, there was no consideration for the promise and therefore no liability growing out of the promise. *Goode* v. *Ætna Casualty & Surety Co.*, 178 Ark. 451, 13 S. W. (2d) 6.

It is also claimed by appellant that the surety company is estopped by the representation of Guild. We do not find anything upon which to base estoppel. It is true that one by his conduct or statements may be estopped from asserting rights which might otherwise have ex-

isted; but, before he will be estopped, it must be shown that another has in good faith relied on such conduct or statements and has been thereby led to change his position for the worse. This court has many times held that contracts and bonds of this character should be construed most strongly against the surety company. That, however, does not mean that the bond or contract shall be construed so as to impose burdens not within terms of the bond. The main question to be determined is whether appellant, by advancing money to the contractor in the manner he did, thereby become entitled to a lien or claim against the surety company. Of course, no one would claim that the surety company became liable for all of the contractor's personal debts, but it is claimed that, because appellant advanced or loaned money to the contractor to meet the payroll of laborers and the money was used to pay for labor and material, the appellant thereby became a subcontractor and is entitled to enforce his claim against the surety company. We do not agree with appellant in this contention. It makes no difference what the purpose was in lending the money, it was a loan from appellant to the contractor. The contractor used the money or most of it to pay for labor and material, but this did not make appellant a subcontractor, and he did not furnish either labor or material. The surety company was compelled to pay materialmen and laborers, and, as shown by the evidence, lost a large sum of money. It was not a volunteer but under its bond it became obligated to pay all bills for material and labor used in the work. "That the equity of a surety on a bond given by the contractor, who by reason of the contractor's default has been obliged to pay materialmen and laborers, is superior to that of a bank loaning money to the contractor, secured by assignments of amounts to become due, has been recognized by this court in *Fidelity & Deposit Co.* v. *Merchants' & Farmers' Bank,* 120 Ark. 519, 179 S. W. 1019. In that case the court quoted with approval from the case of *Prairie State National Bank* v. *United States,* 164 U. S. 227, 17 S. Ct. 142, the following: 'That a stipulation in a

building contract for the retention, until the completion of the work, of a certain portion of the consideration is as much for the indemnity of him who may be guarantor for the performance of the work as for him for whom the work is to be performed; that it raises an equity in the surety in the fund to be created; and that a disregard of such stipulation by the voluntary act of the creditor operates to release the sureties, is amply sustained by authority.' *American Bank & Trust Co.* v. *Langston,* 180 Ark. 643, 22 S. W. (2d) 381; *Southern Surety Co.* v. *J. R. Holden Land & Lbr. Co.,* 14 Fed. (2d) 411; *People's National Bank* v. *Southern Surety Co.,* 288 Pac. 827; *First National Bank* v. *Omil,* 176 Minn. 258, 223 N. W. 298.''

Many cases might be cited, but the question is settled by the decision of this court in cases above cited. It becomes unnecessary to decide other questions discussed by counsel.

The decree is affirmed.