JOHNSON *v.* MARYLAND CASUALTY COMPANY.

5-714                                                     280 S. W. 2d 398

Opinion delivered June 20, 1955.

*John H. Joyce* and *Glen Wing,* for appellant.

*S. Hubert Mayes* and *Pearson & Pearson,* for appellee.

MINOR W. MILLWEE, Justice. In 1951 the E. V. Bird Construction Company, hereinafter called ''Bird,'' entered into a contract with the University of Arkansas for the construction of the Arkansas Law School Building at the university. On October 4, 1951, Bird as principal and Maryland Casualty Company, hereinafter called ''Maryland,'' as surety executed the standard ''Statutory Performance Bond'' whereby they became obligated to pay all indebtedness for labor and materials furnished in the construction or repair of said building.

Shortly after execution of the bond, Maryland ascertained that Bird's financial condition was such that Maryland would be unable to reinsure part of its obligation under the bond as it desired to do. The manager of Maryland's Arkansas office in Little Rock directed W. R. McNair, President of Cravens and Company, the local agent of Maryland at Fayetteville, Arkansas, to endeavor to have Bird increase its capital structure in the approximate sum of $20,000. McNair communicated the request to Floid Bird, son of Mrs. E. V. Bird, and one of Bird's managers at the time. There were some negotiations with Mrs. Bird relative to procurement of additional capital by the assignment of certain life insurance annuities by her, but this was not done. After an unsuccessful attempt to secure additional capital from another uncle, Floid Bird sought the assistance of the appellant, L. E. Johnson. Appellant was shown some of the letters from Maryland's Little Rock manager to McNair which the latter had furnished to Floid Bird. These letters emphasized the necessity of Bird securing additional operating capital and suggested that the furnishers of same execute a ''Subordinate Loan Contract'' in which Maryland's priority over all other claimants in the event of a default under the construction contract would be recognized.

On November 6, 1951, appellant advanced $5,000 to Bird and the latter executed its demand note to appellant for the advancement. The next day, November 7, 1951, appellant wrote Maryland at Little Rock as follows:

''About twenty-five years ago E. V. Bird let me have money to get my start. Of course this was repaid years ago, but I will always feel grateful for his help, therefore, I loaned his two sons, Floyd and Larry, $5,000.00 on their note and stand ready to back them to a limit of $20,000.00.''

Sometime later appellant had a telephone conversation with the manager of Maryland's Little Rock office in which the latter suggested the execution of some kind of agreement by appellant that he would furnish the

balance of the money to Bird and also a financial statement.

On November 28, 1951, appellant entered into a written "Investment Agreement" with Bird in which he agreed to advance a total of $20,000 from time to time, including the $5,000 already advanced, to be used by Bird for payment of labor or materials used in the construction project and for which Bird should execute promissory notes payable to appellant upon completion of the construction contract. Appellant advanced to Bird the further sums of $10,000 on August 15, 1952 and $5,000 on November 3, 1952, pursuant to this agreement. Proper notes were executed by Bird to appellant and the monies so advanced were used by Bird in the payment of labor and material accounts. On August 18, 1952, Bird advised the University of Arkansas by letter that it desired that any money held by the university as retainage upon completion of the building be paid jointly to Bird and appellant. This letter was duly approved by the university on August 19, 1952, without the knowledge or approval of Maryland.

Bird defaulted in the performance of its contract which was taken over by Maryland. On July 12, 1953, the University of Arkansas paid retainage to Maryland in the sum of $34,073.32 which was used in payment of labor and material bills incurred in construction of the building. Maryland also paid additional sums in excess of $20,000 to complete the construction according to contract. In making the three loans to Bird the appellant did not execute the "Subordinate Loan Contract" suggested by Maryland's agent. The laborers and materialmen made no assignment of their respective liens. There was no express agreement between Maryland and appellant relative to such liens nor was there any agreement between them that appellant would be protected under the surety bond or have a superior lien on the retainage.

Appellant brought this action against Bird and Maryland to recover the $20,000 advanced to Bird under the investment agreement. In the complaint it was al-

leged that appellant and Maryland made an agreement to the effect that if appellant would make the $20,000 available to Bird then Maryland would include within the provisions of the surety bond any loss that appellant might incur; that Maryland consented to and ratified Bird's assignment of the retainage under the construction contract to appellant and agreed that he would have a lien on same for the payment of his advances to Bird; and that Maryland had been unjustly enriched and should be estopped to deny that appellant's claim was within the provisions of the surety bond. In an amendment to the complaint appellant asserted that by reason of his advancement of the $20,000 with Maryland's knowledge that it was to be used to pay labor and material bills, appellant was thereby subrogated to the rights of the laborers and materialmen to the retainage held by the university and paid over to Maryland. Maryland answered with a general denial and affirmatively pleaded that the agreement between appellant and Bird was not binding on Maryland, and that any agreement between appellant and Maryland was without consideration and barred by the Statute of Frauds.

There was a jury trial of the cause as between appellant and Maryland. At the conclusion of the testimony offered by appellant as outlined above, the trial court sustained Maryland's motion for a directed verdict in its favor. This appeal is from the judgment rendered upon said directed verdict. Thus the question is whether the evidence, when given its strongest probative force in favor of appellant, is legally sufficient to support a jury finding of Maryland's liability to appellant for the $20,000 advanced to Bird.

The performance bond involved in the instant case is the ordinary statutory bond which obligates the surety only to pay all indebtedness for labor and materials furnished in the construction or repair of the building. In 9 Am. Jur., Building and Construction Contracts, 1954 Pocket Supplement, § 92.1, the author states:

"The well established general rule is that a claim for money loaned or advanced to a building or construction contractor is not within the coverage of the ordinary form of contractor's bond conditioned for the performance of the contract and the payment of all claims for labor and material, even though the borrowed money has been wholly applied to the payment of the cost of labor and material actually going into the construction project. Generally, the recovery of such money loaned or advanced is sought on the theory that inasmuch as the money loaned to the contractor had been used to pay for labor or material going into the project, the lender of the money was entitled to be considered as a furnisher of labor and material, and therefore protected by the bond. However, the courts almost uniformly hold to the view that a lender of money to the contractor may not recover the amount thereof from the contractor's surety as a claim for material or labor furnished to the contractor within the conditions of the ordinary form of contractor's bonds."

See, also, annotations fully supporting this text statement in 127 A. L. R. 974 and 164 A. L. R. 782. Among the numerous cases cited by the annotators in support of the rule are our own cases of *Norton* v. *Maryland Casualty Co.*, 182 Ark. 609, 32 S. W. 2d 172, and *Ayres and Graves* v. *Ellis*, 185 Ark. 818, 49 S. W. 2d 1056. In following this rule in the Norton case we held that a surety company, which executed a bond to pay all of the contractor's bills for labor and materials used in the construction of a road, is not liable for money borrowed by the contractor even though the money was used to meet the contractor's payrolls.

Although appellant alleged in his complaint that he and Maryland made an agreement giving him priority over the latter in the retainage paid over by the university, it is now frankly admitted that no express agreement to that effect was proved. In his testimony appellant repeatedly denied that he had any agreement with Maryland. He also testified that the only agreement he had was with Bird and that when he told Maryland's

agent of Bird's assignment of the retainage to him the latter objected to it. There is also an absence of proof that any agent of Maryland ever made any assurance to appellant that his claim to the retainage would be superior to that of Maryland. On the contrary, it is admitted that Maryland's agent requested that Bird secure from any lender his acknowledgment of the priority of Maryland's claim thereto.

However, appellant insists that the testimony here is such that a jury would be warranted in finding that Maryland so influenced, encouraged and induced appellant to make the $20,000 advances as to entitle him to be subrogated to the rights of laborers and materialmen, or the rights of Maryland, in and to the retainage, either under the doctrine of conventional subrogation or so-called legal or equitable subrogation. In support of this contention appellant relies on the case of *Western Casualty and S. Co.* v. *Meyer,* 301 Ky. 487, 192 S. W. 2d 388, 164 A. L. R. 769. In that case the contractor had defaulted in the payment of material bills and the agent of the surety company participated in a conference with the contractor and the prospective lender in which the latter was assured by the surety's agent, or by the contractor's attorney in said agent's presence, that the loan would be protected by the contractor's bond. This is in contrast to the undisputed facts in the instant case that there had been no default when the appellant made the loans to Bird without any assurance from Maryland's agent, or anyone else, that his claim would be superior to the rights of the surety.

In the circumstances surrounding the procuring of the loan in the Meyer case the Kentucky court held the lender was not a mere volunteer and became subrogated to rights superior to those of the surety; and that the particular circumstances were such as to constitute an exception to the well-settled general rule. In so holding the Kentucky court stated that it had perhaps been more liberal than other courts in its treatment of lenders to contractors in the situation there presented. It is unnecessary for us to determine whether we would follow

230

the holding of the Kentucky court under the same state of facts that were presented in that case. It is sufficient to say that the evidence adduced by the appellant does not bring the case within the exception to the general rule there recognized. The facts here are more in line with those in *American Bank and Trust Co.* v. *Langston,* 180 Ark. 643, 22 S. W. 2d 381, where it was held that a surety was entitled to preference over a bank which made a loan to the contractor secured by assignments of the accounts to become due under the contract. In so holding the court said the bank was a mere volunteer and acquired no lien of any kind; that the surety rather than the bank was entitled to subrogation; and that its equity was superior to that of the bank. See, also, *Goode* v. *Aetna Casualty and Surety Co.,* 178 Ark. 451, 13 S. W. 2d 6.

The evidence offered by appellant was insufficient to establish an agreement, express or implied, between appellant and Maryland that the claims of appellant would come within the provisions of the surety bond; or that any agreement between appellant and Bird in reference to the retainage should, in any degree, bind Maryland. In these circumstances the trial court correctly held the general rule applicable in sustaining the motion for a directed verdict. The judgment is accordingly affirmed.