INTEGON INDEMNITY CORPORATION and Amwest
Surety Insurance Company *v.* Tony BULL, Individually,
and Tony Bull Chevrolet Buick, Inc.

91-284                                        842 S.W.2d 1

Supreme Court of Arkansas
Opinion delivered November 9, 1992
[Rehearing denied December 21, 1992.]

*Hardin & Grace*, for appellant Integon Indemnity Corporation.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, for appellant Amwest Surety Insurance Company.

*David Hodges*, for appellee.

DONALD L. CORBIN, Justice. This is an appeal by two surety companies from a judgment requiring both to make payments under statutory public works performance bonds pursuant to Ark. Code Ann. § 22-9-401 (1987). Appellants assert eight points of error on direct appeal while appellee asserts two points of error on cross-appeal. Our consideration of these alleged errors requires construction of numerous statutes; thus, our jurisdiction is pursuant to Ark. Sup. Ct. R. 29(1)(c). Because we find no merit to appellants' argument that appellee should not have been allowed to recover on the bonds as a matter of law, we reverse the judgment.

Vester Cornelious Construction Company contracted with the Arkansas Highway Commission to build several public works construction projects. The relevant public works projects are referred to throughout this opinion as the Wynne job, the Hope job, and the Hick's Station job. Separate appellant, Integon Indemnity Corporation, issued the statutory performance bonds on both the Wynne and Hick's Station jobs. Both of Integon's bonds listed Cornelious as the principal. Separate appellant, Amwest Surety Insurance Company, issued the bond for the Hope job which also listed Cornelious as principal.

As Cornelious was constructing the various public works jobs, the company experienced financial difficulties. Vester Cornelious requested financial assistance from appellees, Tony Bull and Tony Bull Chevrolet Buick Company. Eventually, Cornelious defaulted on the public works contracts and the appellant surety companies were required to arrange for comple-

tion of the projects. Bull filed a complaint against both Integon and Amwest claiming he supplied labor and materials for completion of the public works jobs and was therefore entitled to payment under the bonds. Bull also sought a declaration of his prior right to three certificates of deposit owned by Bull and Cornelious jointly and assigned by Cornelious to the sureties as security for the bonds. The case was tried before a jury which rendered separate verdicts for Bull against Integon and Amwest for $75,118.79 and $55,982.13 respectively. The jury also found for the sureties regarding the ownership of the certificates of deposit. Integon and Amwest have appealed from the judgment entering the respective verdicts. Bull has cross-appealed on the issue of the certificates of deposit.

On appeal, the first of Integon's eight arguments for reversal is that the trial court erred in refusing to hold, as a matter of law, that Bull did not have a claim against the bond because he did not supply labor or materials to the public works jobs. Amwest makes essentially the same argument as its first point of error and then joins in three of Integon's remaining arguments. As the first arguments are so similar, we consider them both together. Because we reverse and dismiss on that common point, we need not consider any of appellants' remaining arguments. We must however, address Bull's two points argued on cross-appeal.

The argument for reversal is that Bull was not entitled to recover under the bonds because he merely advanced funds to Cornelious or directly to Cornelious' laborers and suppliers rather than actually supplying the labor and materials for the bonded projects as required by section 22-9-401. Integon and Amwest claim that by advancing funds or even paying material-men and laborers directly, as a matter of law, Bull occupied the status of a lender or creditor of Cornelious rather than a supplier or materialman, and therefore could not recover under the statutory bonds. Bull first responds to this claim by asserting that the argument is a challenge to the sufficiency of the evidence and our review is therefore precluded because the abstract does not include the motions for directed verdict. Bull counters the merits of the argument by claiming Bull's testimony provided substantial evidence to support the jury's verdict.

As Bull correctly points out, the abstract does not

contain the motions for directed verdict. Generally, the failure to comply with Ark. Sup. Ct. R. 9 by not abstracting a motion for directed verdict precludes appellate review of that issue. *Cozart* v. *Lewis*, 299 Ark. 500, 774 S.W.2d 127 (1989). However, we have found that affirmance for non-compliance with Rule 9 is not necessarily warranted when the needed information can be gained from some other part of the abstract. *Ransopher* v. *Chapman*, 302 Ark. 480, 791 S.W.2d 686 (1990). In this case, the abstract does include both appellants' motions for judgments notwithstanding the verdicts. Both motions state that the necessary directed verdict motions were made. Thus, consistent with *Ransopher*, the abstract is not deficient in its failure to contain the motions for directed verdict and we need not affirm for failure to comply with Rule 9.

A trial court may enter judgment notwithstanding the verdict only if there is no substantial evidence to support the jury verdict, and the moving party is entitled to judgment as a matter of law. *Dedman* v. *Porch*, 293 Ark. 571, 739 S.W.2d 685 (1987). In reviewing the denial of a motion for directed verdict, we give the proof its strongest probative force viewed in the light most favorable to the party against whom the motion was sought, and affirm the trial court's denial if there is any substantial evidence to support the verdict. *Grendell* v. *Kiehl*, 291 Ark. 228, 723 S.W.2d 830 (1987).

The evidence, as viewed most favorably to Bull, reveals the following. Bull is in the automobile business and was not involved in the construction business prior to his dealings with Cornelious. Bull loaned money to Cornelious on two occasions in exchange for two promissory notes of $1,500.00 and $5,000.00, the latter of which was not repaid. Here, we add parenthetically that Bull does not seek recovery of the two loans totaling $6,500.00—he testified that they were indeed loans and therefore he knew he could not recover them under the bonds. Bull executed a written agreement with Cornelious to provide the "financial backing" for existing jobs and future jobs in return for one half of the profits. The agreement also stated that both parties agreed Bull would "handle and disburse all proceeds from each job." Bull testified that he agreed to continue furnishing the financial backing so he could get his $5,000.00 back.

Bull testified that he was never Cornelious' partner, rather he was a supplier of labor and materials to Cornelious' various construction projects. Bull stated that he borrowed close to $200,000.00 from the Bank of Augusta to pay for labor and supplies; his purpose was to see where the money was going, to make sure the supplies were going on the jobs, and not to advance funds to finish the jobs. Numerous exhibits were introduced by all parties showing either the checks or summaries of checks drawn on the Bank of Augusta by Bull and made payable not just to Cornelious but also directly to suppliers of labor and materials on all three public works jobs. Bull testified that he paid the bills associated with the jobs and did not make a loan; that he paid the suppliers, but did not advance funds.

Bull argues that the foregoing evidence is substantial evidence that he was a supplier of labor and materials and therefore held a valid claim against Amwest and Integon under the bonds they issued. We disagree with Bull's contention that there is substantial evidence to support the jury's verdict. To the contrary, we agree with Amwest and Integon that they were entitled to judgment as a matter of law.

The bonds at issue in this appeal are performance bonds for public works projects. Recovery under these bonds is controlled by section 22-9-401(a) which states that:

> All surety bonds required by the State of Arkansas . . . for the repair, alteration, construction, or improvement of any public works . . . shall be liable on all claims for labor and materials entering into the construction, or necessary or incident to or used in the course of construction, of the public improvements.

The question presented is whether, by writing checks directly to suppliers of material and labor, Bull has a claim for labor and materials that section 22-9-401 requires the sureties to pay.

We have previously decided this precise issue in *Ayres & Graves* v. *Ellis*, 185 Ark. 818, 49 S.W.2d 1056 (1932). Although the *Ellis* decision applied an earlier version of section 22-9-401, both statutes are similar in all relevant respects. In *Ellis*, W.C. Ellis d/b/a as the W.C. Ellis Lumber Company contracted with A.O. Freeman to furnish Freeman money and material to carry

out Freeman's sub-contract for concrete structural work on a public works project. When Freeman completed the work on his sub-contract, he had a balance due Ellis. Ellis sued to recover the balance under the principal contractor's bond. The evidence presented in the *Ellis* case revealed that Ellis undertook to finance Freeman's contract, to order and deliver all material required, to keep a payroll record, and to render monthly statements of Freeman's account to which Ellis added a charge of 8%. The statements included, among other items furnished to Freeman, cash advances. Ellis' right to recover the materials furnished was not questioned; however, his right to recover from the surety the money he paid directly to Freeman's laborers was questioned. In *Ellis*, we stated that the case of *Norton* v. *Maryland Casualty Co.*, 182 Ark. 609, 32 S.W.2d 172 (1930), was controlling. *Norton* held that one who advances money to a public works contractor is not a sub-contractor but a creditor and therefore does not have a claim against the surety. In *Ellis*, we stated:

> The fact that Ellis personally paid the laborers in the instant case does not alter the legal principles there announced [in *Norton*]. Such payment was nothing more than an advance to Freeman, and created only the relation of debtor and creditor between Ellis and Freeman, and did not constitute Ellis a subcontractor, as appellee contends, nor did it make him a person holding such a claim as the statute requires the surety to pay.

*Ellis*, 185 Ark. at 822-23, 49 S.W.2d at 1058. Ultimately, *Ellis* held that Ellis had a claim against the surety for materials furnished Freeman, but that the only claim Ellis had for the payments he made to Freeman's laborers was against Freeman himself, not the surety.

The *Ellis* case controls the present case. The two cases present almost identical facts. We see no distinction in the fact that *Ellis* involved direct payments only to suppliers of labor, while the present case involves payments to both suppliers of labor and suppliers of materials. The evidence, when viewed most favorably to Bull as is required, can lead reasonable minds to only one conclusion—that, Bull directly paid for labor and materials that were part of a public works project. Consistent with *Ellis* and *Norton*, we hold the fact that Bull paid Cornelious' laborers and

suppliers directly, makes Bull Cornelious' creditor, not a supplier of labor and materials with a claim against the surety. As a matter of law, Amwest and Integon were entitled to judgment and the trial court erred in denying the motions for directed verdicts and judgments notwithstanding the verdicts. The jury verdicts in favor of Bull against Integon and Amwest are reversed and Bull's claims are dismissed.

The first issue on Bull's cross-appeal is a challenge to four jury instructions given by the trial court. Bull argues the instructions are a "hodge-podge of incorrect law, inapplicable to the facts in the case and constitute prejudicial error."

First, Bull challenges Instruction #32, which states as follows:

### JURY INSTRUCTION NO. 32

Integon asserts that it is entitled to proceeds of the Bank of Augusta certificate of deposit number 17923 in the amount of $14,257.00 by virtue of having a perfected assignment in such certificate of deposit. To establish that it has a perfect assignment, Integon has the burden of establishing each of the following essential propositions:

1. The certificate of deposit is in the possession of Integon pursuant to agreement.

2. Integon has given value for the assignment.

3. Cornelious had rights in the certificate of deposit assigned to Integon.

Whether Integon has proved each of these elements by a preponderance of the evidence is for you to determine.

Bull claims this instruction was misleading to the jury because it suggested that proving an assignment would entitle Integon to the proceeds of the certificate of deposit. Bull claims this was error because the proper issue before the jury was who was entitled to the proceeds, not whether Integon was entitled to the proceeds by virtue of its assignment. Bull also argues the instruction was "inherently erroneous, redundant and covered by verdict form." However, Bull does not allege which of the sixteen verdict forms addressed the substance of the challenged

instruction.

Integon asserts that Instruction #32 is a correct statement of the law pursuant to Ark. Code Ann. § 4-9-305 (Repl. 1991), and *General Electric Co.* v. *M & C Mfg. Co.*, 283 Ark. 110, 671 S.W.2d 189 (1984). Those two authorities stand for the proposition that a security interest in a certificate of deposit is perfected by possession. In addition, Integon relies on the Official Commentary to Ark. Code Ann. § 4-3-116 (Repl. 1991), which states that an instrument payable to one party "and/or" another party is payable in the alternative to either or to both of the stated parties.

■ We note that, by way of Instruction #23, the jury was instructed that Bull, Integon and Amwest claim superior rights in the respective certificates of deposit and that entitlement to the proceeds of the respective certificates of deposit was an issue the jury would have to decide. We cannot disagree with the authorities cited by Integon in support of Instruction #32. Bull has cited us to no authority that indicates the instruction was an incorrect statement of applicable law. Instruction #32 was not misleading to the jury in light of the fact that Instruction #23 was given. The trial court did not err in giving Instruction #32.

Second, Bull challenges Instruction #33. He claims Instruction #33 is not based on any statute and is in conflict with Instruction #24. The two instructions state as follows:

### JURY INSTRUCTION NO. 24 [Official Commentary to] (ACA § 4-3-116)

You must determine whether or not the certificates of deposits are payable to Cornelious Construction Company and Tony Bull jointly or in the alternative.

If an instrument is found to be payable jointly, all of the payees must participate in any negotiation, discharge or enforcement of the instrument. But if the instrument is found to be payable in the alternative, any one of the payees may negotiate, enforce or discharge the instrument, provided they have possession of the certificate of deposit.

In deciding whether an agreement is payable in the alternative or jointly, you must look to the intent of the parties in drawing the instrument.

You are instructed that if it is not clear that the parties intended to make the instrument payable in the alternative, then you should find it to be payable jointly.

### JURY INSTRUCTION NO. 33

A certificate of deposit payable to one party "and/or" another party, is payable in the alternative. An alternative payee in possession can assign or transfer a certificate of deposit by his signature alone.

■ We disagree with Bull's contention that Instructions #24 and #33 are in conflict. To the contrary, the two instructions are in harmony. In addition, while the two instructions overlap somewhat, they are both accurate statements of applicable law. *General Elec. Co.*, 283 Ark. 110, 671 S.W.2d 189; section 4-9-305; Official Commentary to section 4-3-116. Moreover, since the jury was instructed that the priority of ownership of the certificates of deposit was an issue for their determination, the trial court did not err in giving Instruction #33.

Third, Bull challenges Instruction #34, which states that:

### JURY INSTRUCTION NO. 34

By the terms of its agreement, the assigned funds may be used to indemnify Integon for all losses, costs and expense associated with bonds written on behalf of Cornelious Construction Company. Integon may indemnify itself for the following losses, costs and expenses from the assigned funds:

1. Amounts paid to subcontractors, suppliers and laborers of Cornelious Construction Company which you find were reasonable, proper and made in good faith by Integon under the terms of its bond.

2. Amounts paid by Integon to complete or monitor the completion of the various construction projects in which you find were reasonable, proper and made in good faith under the terms of its bond.

3. Amounts paid by Integon to attorneys in connection with investigating, defending and paying claims against its bonds which you find were reasonable, proper

and made in good faith.

Whether any of these types of losses have been proved by the evidence is for you to determine.

■ Bull claims that the instruction is erroneous because it permits Integon to indemnify itself from the assigned funds for expenses associated with projects not involved in the current litigation. This argument is without merit. First of all, we note that each of the expenses subject to indemnification is limited by a requirement that the jury find the expenses to be "reasonable, proper, and made in good faith." Thus, it is unlikely that the jury would permit Integon to receive indemnification for expenses that were not even associated with the bonded projects at issue in this case. Any possible bias the jury may have had toward Integon is contradicted by the fact that, of the $22,000.00 certificate of deposit, the jury only awarded Integon the amount it claimed it was entitled to, $14,257.00. In addition, Bull does not allege that Integon made such a request for indemnification of expenses associated with bonded projects unrelated to this case. Thus, any alleged error is hypothetical and not prejudicial to Bull.

Fourth, Bull challenges Instruction #35, which states that:

## JURY INSTRUCTION NO. 35

Alternatively, Integon asserts a right to Bank of Augusta certificate of deposit number 17923 by virtue of a Writ of Garnishment which is served on Bank of Augusta in enforcement of a judgment which Integon has against Cornelious Construction Company. This certificate of deposit is garnishable by Integon in proportion to Cornelious Construction Company's ownership of the funds.

You may consider relevant evidence to determine the respective contributions of Bull and Cornelious Construction Company, as well as any intent of Bull to make a gift to Cornelious Construction Company.

Bull has the burden of proving what portion of the certificate of deposit is actually owned by him.

Bull asserts the instruction is erroneous because there was no evidence of any gift from Bull to Cornelious and because it places the burden of proving Integon's claim to the certificate on Bull.

Bull asserts the proper instruction should state that each party has the burden of proving its own interest in or claim to the certificate.

   Bull's argument with respect to Instruction #35 is wholly without merit. First, while there is testimony abstracted that directly indicates Bull made a gift to Cornelious, there is evidence that Bull included Cornelious as joint owner of the certificate of deposit in question. From this evidence, the jury could infer, among other things, that Bull made a gift to Cornelious. Second, Bull's assertion that the challenged instruction improperly distributes the burden of proof is entirely without merit. Instruction #23 informed the jury that Bull claimed superior ownership of the certificate of deposit. Thus, Instruction #35 reads exactly as Bull argues it should read, i.e., it places the burden of proving a claim on the party asserting the claim. There was no error in the trial court's giving Instruction #35.

Bull's second argument on cross-appeal is that he should have been awarded penalties and attorneys fees pursuant to Ark. Code Ann § 23-79-208 (1987). The trial court denied Bull's request for penalties and fees because he did not recover the amount sued for as required by section 23-79-208. Bull argued that the pleadings were amended to conform to the proof, therefore he recovered the amount sued for and should be awarded the penalties and fees.

   Obviously, our reversal of Bull's verdicts renders this issue moot. There is no longer any doubt that he did not recover the amount sued for. Therefore, there was no prejudicial error in the denial of penalties and fees.

The judgment is reversed and dismissed on direct appeal and affirmed on cross-appeal.