A01A1075. GULF INSURANCE COMPANY v. GFA GROUP, INC.
(554 SE2d 746)

MIKELL, Judge.

The issue in this appeal is whether a payroll services company, which pays the wages of the employees of a contractor of a public works project, is a qualified claimant under a payment bond furnished by the contractor under Georgia's "Little Miller Act."[1]

The record shows that in April 1996, QRC, Inc. (the "Contractor") was engaged by the Washington County Board of Education to reroof a number of schools. Pursuant to an earlier contract, GFA Group, Inc. had agreed to provide payroll services and workers' compensation insurance to the Contractor. Under their arrangement, GFA would issue payroll checks on its own account, remit the withheld taxes to the appropriate authorities, pay the workers' compensation premiums, and submit its invoice to the Contractor weekly for immediate repayment. GFA and the Contractor later modified their contract on the Washington County project to provide that GFA would be compensated through a third-party disbursing agent. Evidence indicates that it was the practice of the disbursing agent to pay GFA's invoices monthly.

The Contractor arranged for a payment bond to be issued by Gulf Insurance Company in connection with the roofing project. An eligible claimant under the bond was defined "as one having a direct contract with the [Contractor] or with a Subcontractor of the [Contractor] for labor, material, or both, used or reasonably required for use in the performance of the Contract." The Contractor was subsequently removed from the roofing project, and GFA was not reimbursed for approximately $70,000 which the Contractor owed GFA

---

[21] Id. ("We will affirm a trial court's finding that counsel was effective unless it is clearly erroneous.").

[1] OCGA § 13-10-1 et seq.

under their payroll services arrangement. GFA sued the Contractor, its principal shareholder, and Gulf to recover the delinquent balance.

GFA and Gulf filed cross motions for summary judgment. The trial court granted GFA's motion on the issue of Gulf's liability to GFA under the payment bond. Gulf appeals. We reverse because GFA did not provide labor or material to the public works project and so was not an eligible claimant under Gulf's payment bond.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[2]

Gulf issued its payment bond as required by OCGA § 13-10-1, the Little Miller Act, which provides, in part:

> (b) No contract with this state or any public board or body thereof[ ] for the doing of any public work shall be valid for any purpose, unless the contractor shall give: . . . (2) (A) A payment bond with good and sufficient surety or sureties, payable to the state or public board or body thereof for which the work is to be done, and for the use and protection of all subcontractors and all persons supplying labor, materials, machinery, and equipment in the prosecution of the work provided for in the contract. The payment bond shall be in the amount of at least the total amount payable by the terms of the contract.

The statutory bond requirement is intended to protect subcontractors and materialmen because they cannot secure a mechanic's lien on a public building.[3] However, a bond given under the statute may also extend protection beyond those who would have a lien if the project were private property.[4] In interpreting Georgia's statutory bond requirement, we may look to decisions of the federal courts construing the bond requirements under the federal Miller Act.[5]

The trial court held that GFA was a proper claimant under Gulf's payment bond because it provided labor to the project by paying the wages of the project laborers. Gulf claims the trial court erred in ruling that GFA was a proper claimant under the payment bond because GFA was a lender rather than a supplier of labor or materials.

---

[2] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] See *Motor Supply Co. v. St. Paul Mercury Indem. Co.*, 67 Ga. App. 236, 239 (19 SE2d 737) (1942).

[4] See *Western Cas. &c. Co. v. Fulton Supply Co.*, 60 Ga. App. 710, 711 (4 SE2d 690) (1939).

[5] 40 USC § 270a; *Amcon, Inc. v. Southern Pipe &c. Co.*, 134 Ga. App. 655, 656 (215 SE2d 712) (1975).

It has been established that a contractor's lender will not qualify as a claimant under a public works payment bond.[6] For example, a statutory bond will not "have application to a debt owing by the subcontractors for money merely loaned or advanced to them by a third person to meet a pay-roll."[7] GFA claims that it is not a lender because it is paid a fee for services rather than interest. GFA further argues that this service is applied to the public works project because it pays the project laborers.

GFA's relationship with the Contractor has elements of both a lender and a service provider. We find the lender analogy to be persuasive insofar as GFA advanced money on behalf of the Contractor for which it expected to be repaid. It would also be accurate to describe GFA as providing a service, although it is an administrative service the Contractor would otherwise be required to perform on its own behalf. But regardless of whether GFA is best described as performing the function of a lender or a service provider, the fundamental question for purposes of its status as a claimant under the bond is whether GFA can be said to provide labor to the project. For that purpose, the agreement between GFA and the Contractor is as meaningful for what GFA expressly will not do as what it will do. This agreement provides: "Both Parties agree and understand that agents of the [Contractor] are the responsible parties for acquiring and terminating employees while on their work sites and disciplinary measures taken against said employees. [GFA] will not retain control over the employees nor direct their behavior in any way. . . ."

The record shows that GFA was not locating the project laborers, placing them under contract, and then providing them to the Contractor. In their joint statement of undisputed material facts, GFA and Gulf stipulate that:

> [Contractor] was solely responsible for hiring, setting rate of pay, supervising and firing of all personnel used by [Contractor] on the Project. [GFA's] role was limited to providing payroll services, and issuing checks in payment of the payroll and the workers compensation insurance premiums for [Contractor] personnel used on the Project.

Although GFA argues that it is a statutory employer under OCGA § 34-8-46, there is no evidence that GFA is a temporary help contracting firm because it is not shown that "[a] separate employ-

---

[6] *United States v. Standard Surety &c. Co. of New York*, 37 FSupp. 323 (S.D. N.Y. 1941); *First Nat. Bank &c. v. American Surety Co. &c.*, 53 F2d 746 (5th Cir. 1931).

[7] *First Nat. Bank &c. v. MacDougald Constr. Co.*, 45 Ga. App. 853, 854 (2) (166 SE 256) (1932).

ment contract exists between the temporary help contracting firm and each individual it hires as an employee."[8] What the record does show is that GFA performed an administrative function on behalf of the Contractor. To the extent that GFA is seen as providing a service, it is an administrative service provided for the benefit of the Contractor and cannot be fairly seen as providing labor to the school roofing project. We also note that while the laborers themselves were certainly protected by the bond, as the trial court states, it does not follow that GFA can stand in their shoes for purposes of asserting a claim. Accordingly, we hold that GFA was not a valid claimant under Gulf's public works payment bond.

Gulf is unable to point to any Georgia authority which is on point or persuasive. GFA relies on *Barton Malow Co. v. Metro Mfg.*[9] and *Tom Barrow Co. v. St. Paul Fire &c. Ins. Co.*[10] for the proposition that "subcontractor" should be interpreted expansively for purposes of identifying proper claimants under a statutory bond. These cases are inapplicable because both concern whether a materials supplier must have privity with the prime contractor to qualify as a claimant under a payment bond. Privity is not at issue here. While we agree that "the bonds statute is liberally construed for the protection of those who do work or furnish materials for public works,"[11] we are facing the threshold issue of whether GFA is within the class of those persons that provided labor or materials.

Both parties reach beyond Georgia for authority to support their position, but the only applicable foreign decisions are in accord with a finding that GFA is not a claimant under the bond. A federal district court recently held, under similar factual circumstances, that a payroll services firm was not a provider of labor or material under a surety bond.[12] The California Court of Appeals reached the same conclusion in *Primo Team v. Blake Constr. Co.*[13] We acknowledge that these decisions do not involve a surety bond issued under the Little Miller Act, but they are nevertheless persuasive.

GFA's final argument is that it is entitled to make a claim under the terms of the bond under the general rules of contract interpretation. The presumption under a statutory bond is that the parties

[8] OCGA § 34-8-46.

[9] 214 Ga. App. 56 (446 SE2d 785) (1994).

[10] 205 Ga. App. 10 (421 SE2d 85) (1992).

[11] (Citation and punctuation omitted.) *Ingalls Iron Works Co. v. Standard Accident Ins. Co.*, 107 Ga. App. 454, 458 (1) (130 SE2d 606) (1963).

[12] *Tri-State Employment Svcs. v. Mount Batten Surety Co.*, 2001 U. S. Dist. LEXIS 6279 (S.D. N.Y.).

[13] 3 Cal. App.4th 801 (4 Cal. Rptr.2d 701) (1992); see also *Integon Indem. Corp. v. Bull*, 311 Ark. 61 (842 SW2d 1) (1992) (direct payor of labor and material on behalf of contractor made payor the contractor's lender and not a proper claimant under payment bond).

intended to execute a bond in accordance with the aims of the statute.[14] We decline to interpret the services provided by GFA to be "labor used . . . or reasonably required for use in the performance of the Contract" on the theory that paying the laborers was required to complete the project or required by the school board.

For the above-stated reasons, we hold that the trial court erred in granting summary judgment to GFA and in failing to grant summary judgment to Gulf.

*Judgment reversed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED SEPTEMBER 13, 2001.

*Thompson & Slagle, Jefferson B. Slagle, Alfred A. Malena, Jr.,* for appellant.
*J. Hatcher Graham,* for appellee.

---

[14] See *Home Indem. Co. v. Battey Machinery Co.,* 109 Ga. App. 322, 326-327 (136 SE2d 193) (1964).